# UNITED STATES COURT OF APPEALS
## THIRD CIRCUIT

### Docket No. 13-3467

DANIELLE SANTOMENNO, for the use and benefit of the John Hancock Trust and the John Hancock Funds II; KAREN POLEY and BARBARA POLEY, for the use and benefit of the John Hancock Funds II; DANIELLE SANTOMENNO, KAREN POLEY and BARBARA POLEY individually and on behalf of ERISA employee benefit plans that held, or continue to hold, group variable annuity contracts issued/sold by John Hancock Life Insurance Company (U.S.A.), and the participants and beneficiaries of all such ERISA covered employee benefit plans; and DANIELLE SANTOMENNO individually and on behalf of any person or entity that is a party to, or has acquired rights under, an individual or group variable annuity contract that was issued/sold by John Hancock Life Insurance Company (U.S.A.) where the underlying investment was a John Hancock proprietary fund contained in the John Hancock Trust

Plaintiffs-Appellants,

vs.

John Hancock Life Insurance Company (U.S.A.), John Hancock Investment Management Services, LLC, John Hancock Funds, LLC, and John Hancock Distributors, LLC,

Defendants-Appellees.

---

ON APPEAL FROM AN ORDER OF DISMISSAL ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, NEWARK AT NO. 2:10-cv-01655 (WJM)(MF)

---

### BRIEF AND APPENDIX VOLUME I
### ON BEHALF OF APPELLANTS

---

Stephen Skillman
Arnold C. Lakind
Robert L. Lakind
SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Rd, Ste 200
Lawrenceville, N.J. 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511

Moshe Maimon
LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
BY: Moshe Maimon, Esquire
Telephone: (212) 605-6200
Fax: (212) 605-6290

*Attorneys for Appellants*

# **TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT .......................................................................... 1

ISSUES PRESENTED ............................................................................................... 2

STATEMENT OF THE CASE ................................................................................... 4

    A.    Procedural History ............................................................................... 4

    B.    Statement Of Facts ............................................................................... 5

STANDARD OF REVIEW ...................................................................................... 11

SUMMARY OF ARGUMENT ................................................................................ 12

ARGUMENT ........................................................................................................... 14

    PLAINTIFFS' COMPLAINT STATES A CLAIM AGAINST JOHN
    HANCOCK UNDER ERISA FOR BREACH OF FIDUCIARY
    DUTY IN CHARGING ALLEGED EXCESSIVE FEES FOR THE
    PERFORMANCE OF FIDUCIARY FUNCTIONS FOR
    RETIREMENT PLANS

    A.    John Hancock is an ERISA Fiduciary ........................................... 16

            1.    John Hancock is an ERISA Fiduciary Because it Renders
                 Investment Advice for a Fee to the Retirement Plans with
                 Which it Contracts ................................................................ 19

            2.    John Hancock is Also an ERISA Fiduciary Because it
                 Exercises Discretionary Authority Respecting
                 Management of the Retirement Plans With Which
                 it Contracts .......................................................................... 24

B.    John Hancock is Acting as a Fiduciary When it Charges Alleged Excessive Fees for the Performance of Fiduciary Functions for the Retirement Plans With Which it Contracts, and Therefore, John Hancock is Subject to a Claim for Breach of Fiduciary Duty Based on Those Alleged Excessive Fees ................................................................... 32

CONCLUSION ................................................................................. 44

CERTIFICATION OF BAR MEMBERSHIP ....................................... 45

CERTIFICATION OF COMPLIANCE................................................. 45

CERTIFICATION OF FILING AND SERVICE ................................... 46

# TABLE OF AUTHORITIES

## Cases

**Page**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 11, 14

*Bd. of Trs. of Bricklayers & Allied Craftman Local 6
    of N.J. Welfare Fund v. Wettlin Assocs.*, Inc.
    237 F.3d 270 (3d Cir. 2001) ....................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................11, 14

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ...................................................................15

*Charters v. John Hancock Life Ins. Co.*,
    583 F.Supp. 2d 189 (D. Mass. 2008) .................................................. 27, 38

*Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ................................................................................ 21

*Chicago Bd. Options Exch., Inc. v. Comm. Gen. Life Ins. Co.*,
    713 F.2d 254 (7th Cir. 1983) ................................................................... 42

*Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*,
    805 F.2d 732 (7th Cir. 1987) .............................................................. 27, 42

*Edmonson v. Lincoln Nat'l. Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013) ................................................................... 18

*F. H. Krear & Co. v. Nineteen Named Trs.*,
    810 F.2d 1250 (2d Cir. 1987) ............................................................. 27, 36

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .................................................................... 14

*Haddock v. Nationwide Fin. Servs.*,
    419 F.Supp. 2d 156 (D. Conn. 2006) ............................................ 27, 29, 39

*Healthcare Strategies v. ING Life Ins. & Annuity* Co., No. 11-00282-WGY
_____ F. Supp. 2d _____, 2013 WL 4446919
(D. Conn. Aug. 9, 2013)......................................................................... 27, 28

*Hecker v. Deere & Co.,*
556 F. 3d 575 (7th Cir. 2009)................................................................28, 29

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.,*
57 F.3d 1255 (3d Cir. 1995)........................................................................ 18

*IT Corp. v. Gen'l Am. Life Ins. Co,*
107 F.3d 1415 (9th Cir. 1997)..................................................................... 40

*Leimkuehler v. Am. United Life Ins. Co.,*
713 F.3d 905 (7th Cir. 2013)....................................................................... 39

*Midwest Comm. Health Serv., Inc. v. Am. United Life Ins. Co.,*
255 F.3d 374 (7th Cir. 2001)........................................................................ 29

*Pegram v. Herdrich,*
530 *U.S.* 211 (2000) ....................................................... 15, 16, 32, 36

*Phillips v. County of Allegheny,*
515 F.3d 224 (3d Cir. 2008)......................................................................... 14

*Renfro v. Unisys Corp.,*
671 F. 3d 314 (3d Cir. 2011)..............................................................*passim*

*Santomenno v. Transamerica Life Ins. Co.,* Civ. No. 12-02782,
2013 WL 603901 (C.D. Cal. Feb. 19, 2013)...................................... 38, 39, 41

*Schulist v. Blue Cross of Iowa,*
717 F.2d 1127 (7th Cir. 1983)...................................................................... 41

## **Federal Statutes**

15 U.S.C. § 80a-1, et seq ............................................................................ 3

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 .......................................................................................... 1

29 U.S.C. § 1001 ............................................................................. 1, 28

29 U.S.C. § 1001(21)(A)(i) .................................................................. 28

29 U.S.C. § 1002(21)(A) .............................................. 17, 18, 19, 24, 29

29 U.S.C. § 1002(21)(A)(i) ........................................... 2, 12, 19, 31

29 U.S.C. § 1002(21)(A)(ii) ...................... 2, 12, 18, 19, 10, 21, 22, 24

29 U.S.C. § 1002(21)(A)(iii) ................................................................

29 U.S.C. § 1102(a) ........................................................................... 17

29 U.S.C. § 1132(e) ............................................................................. 2

## Federal Rules

FED. R. APP. P. 4(a)(1)(A) .......................................................... 1, 32

FED. R. APP. P. 12(b)(6) ......................................................... 4, 11, 17

FED. R. APP. P. 32.1(a) ...................................................................... 39

FED. R. CIV. P. 12(g)(2) ................................................................. 4, 5

## Federal Regulations

29 C.F.R. § 2510.3-21(a)(1) .............................................................. 22

29 C.F.R. § 2510.3-21(c)(1) .............................................................. 20

75 Fed. Reg. 65263 ............................................................................ 27

5968481.5

# TABLE OF APPENDIX

## Volume I

Notice of Appeal, Docket No. 86, Filed August 9, 2013 .....................................Ja-1

Order Dismissing Plaintiffs' Complaint With Prejudice,
Docket No. 85, Filed July 24, 2013 ............................................................Ja-4

Opinion Dismissing Plaintiffs' Complaint With Prejudice
By Honorable William J. Martini, U.S.D.J., Dated July 24, 2013
Docket No. 84 ...........................................................................................Ja-5

Docket, Santomenno v. John Hancock Life Insurance Company,
No. 2:10-cv-01655-WJM-MF ..................................................................Ja-15

## Volume II

Plaintiffs' Second Amended Complaint (abbreviated), Docket No. 34,
Filed October 22, 2010.............................................................................Ja-19

## Volume III

Defendant's Notice of Renewed Motion to Dismiss
The Second Amended Complaint,
Docket No. 71, Filed December 14, 2012 ...............................................Ja-208

Certification of Alison V. Douglass in Support of Defendant's
Renewed Motion to Dismiss,
Docket No. 71, Filed December 14, 2012 ...............................................Ja-211

Exhibit A - Group Annuity Contract Between JHUSA and the
Trustees of J&H Berge, Inc. 401(k) Profit Sharing Plan,
dated March 24, 2008...............................................................................Ja-214

Exhibit B - Allocated Retirement Account Group Annuity Contract
Between the Manufacturers Life Insurance Company (U.S.A.) and
the Trustees of Scibal Associates, Inc. 401(k) Plan,
dated January 8, 2004...............................................................................Ja-273

Exhibit C - Letter from Steven N. Krupp, Dated May 11, 2010, Terminating The J&H Berge Contract....................................................Ja-316

Exhibit D - Letter from John J. McSorley, Dated December 30, 2009, Terminating the Scibal Contract. ..........................................................Ja-318

Exhibit E - JHUSA Booklet Entitled, "Your Investment Options"........Ja-320

### Volume IV

Exhibit F - Transcript of Hearing On Plaintiffs' Appeal, Dated February 9, 2012....................................................................................Ja-367

Declaration of Robert L. Lakind in Support of Plaintiffs' Opposition to Defendant's Renewed Motion to Dismiss (abbreviated), Docket No. 72, Filed January 25, 2013 ........................................................................Ja-375

Exhibit A to L Omitted ........................................................................Ja-380

Exhibit M - John Hancock Document, Entitled "Fund Check: John Hancock's Fund Review and Scorecard" ...............................................Ja-381

Exhibit N - Relevant pages from a John Hancock document titled, "JH Signature Fund Information Guide," dated September 30, 2009 ...........Ja-384

Exhibit O - The "John Hancock" "updates" document ...........................Ja-389

Exhibit P - JHUSA document titled, "Fiduciary Responsibility: An Employer's Guide"..................................................................................Ja-391

Exhibit Q - Relevant pages of a JHUSA document titled, "Navigating the Waters: A Fiduciary Handbook for Retirement Plan Trustees" .......Ja-409

Exhibit R - JHUSA document titled, "Introducing the John Hancock USA Fiduciary Standards Warranty"......................................................Ja-412

Exhibit S - Department of Labor Advisory Opinion 2005-22A ............Ja-415

Exhibit T - Trademark/Service Mark Application, Principal Register and Publication & Issue Review Complete identifying JHUSA as the owner of the trademark, "Fund Check" .................................................Ja-418

Exhibit U - Danielle Santomenno's April 1, 2010 to June 21, 2010 JHUSA account statement, redacted........................................................Ja-429

Reply Certification of Alison V. Douglass in Support of Defendant John Hancock Life Insurance Company's Renewed Motion To Dismiss, Docket No. 73, Filed February 15, 2013 ................................................Ja-432

Exhibit A - Danielle Santomenno's quarterly statements (redacted) for participation in the J&H Berge, Inc. 401(k) Profit Sharing Plan for the period April 1, 2009 to June 30, 2009 ......................Ja-434

Exhibit B - Stipulation of Dismissal and Judgment Entered in the matter of *Charters v. John Hancock Life Insurance Company (U.S.A.),et al., Civ. Ni. 07-11371 (D.Mass. Aug. 21, 2009)*.........Ja-440

## JURISDICTIONAL STATEMENT

Plaintiffs allege that Defendant John Hancock Life Insurance Company (U.S.A.) and certain of its affiliates (referred to collectively as "John Hancock") charge excessive fees for investments in retirements plans for which it renders investment advice, in violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* The District Court had jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). This Court has appellate jurisdiction to review the dismissal of Plaintiffs' complaint pursuant to 28 U.S.C. § 1291. The order of dismissal was filed on July 24, 2013 (Ja 4), and the notice of appeal was filed on August 9, 2013 (Ja 1). Therefore, this is a timely appeal from a final judgment that dismissed all of Plaintiffs' remaining claims. *See* FED. R. APP. P. 4(a)(1)(A).

## ISSUES PRESENTED

1.      Is John Hancock an ERISA fiduciary under 29 U.S.C. §
1002(21)(A)(ii) because it renders investment advice for a fee to the retirement
plans with which it contracts by selecting a group of mutual funds from which the
employer plan sponsor must choose for inclusion in its plan, monitoring and
advising the sponsor about the performance of those funds, and replacing any
funds John Hancock concludes are no longer suitable for inclusion in the plan?

2.      Is John Hancock an ERISA fiduciary under 29 U.S.C. §
1002(21)(A)(i) because it exercises discretionary authority respecting the
management of the retirement plans with which it contracts by selecting a group
of mutual funds from which the employer plan sponsor must choose for inclusion
in its plan, monitoring the performance of those funds, and exercising authority to
change both the funds included in the plans and the fees John Hancock charges for
its services?

3.      Was John Hancock acting as a fiduciary in charging alleged
excessive fees for the performance of fiduciary duties for the retirement plans with
which it contracts?

The issues raised by this appeal were presented by John Hancock's renewed
motion to dismiss and were ruled upon by the District Court in its opinion and

968481.5

2

order dismissing Plaintiffs' complaint. The part of the District Court's opinion dismissing all of Plaintiffs' remaining claims on the ground that John Hancock is not an ERISA fiduciary with respect to the conduct upon which those claims are based may be found at Ja 12 to Ja 14.

The case was previously before this Court on Plaintiffs' appeal from the District Court's original dismissal of Plaintiffs' complaint, which resulted in an affirmance of the dismissal of Plaintiffs' claims under the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-1, et seq., and a reversal of the dismissal of their ERISA claims. *Santomenno v. John Hancock Life Ins. Co.*, 677 F.3d 178 (3d Civ. 2012) (hereinafter "*Santomenno I*").

The only case related to this appeal of which Plaintiffs' counsel are aware is *Santomenno v. Transamerica Life Ins. Co.*, Civ. No. 12-02782, 2013 WL 603901 (C.D. Cal., Feb. 19, 2013), in which the District Court for the Central District of California rejected arguments similar to the arguments the District Court adopted in dismissing Plaintiffs' complaint. Discovery is now being conducted in that case.

968481.5

## STATEMENT OF THE CASE

### A.    Procedural History

Plaintiffs filed this action on March 31, 2010. *Santomenno I*, 677 F.3d at

181. John Hancock moved to dismiss the complaint under FED. R. CIV. P. 12(b)(6).

The District Court dismissed the complaint in its entirety. *Santomenno v. John

Hancock Life Ins. Co.*, Civ. No. 2:10-cv-01655, 2011 WL 2038769 (D. N.J. May

23, 2011). On appeal, this Court affirmed the dismissal of the counts of Plaintiffs'

complaint asserting claims under the ICA, but vacated the part of the District Court

order dismissing the counts asserting claims under ERISA and remanded for

further proceedings. *Santomenno I*, 677 F.3d at 189-90.

Following that remand, John Hancock filed a renewed motion to dismiss the

ERISA counts of Plaintiffs' complaint under FED. R. CIV. P. 12(b)(6). Most of the

arguments raised in support of this motion could have been raised in John

Hancock's original motion to dismiss, but were not raised at that time. In their

opposition, Plaintiffs argued that John Hancock was barred by FED. R .CIV. P.

12(g)(2) from raising those new arguments in support of a renewed FED. R. CIV. P.

12(b)(6) motion to dismiss and could only pursue arguments relating to John

Hancock's fiduciary status under ERISA, which had been raised in their original

motion to dismiss but not ruled upon in granting the motion.

4

968481.5

In an opinion issued on January 24, 2013, the District Court dismissed all of Plaintiffs' ERISA claims solely on the grounds that John Hancock was not an ERISA fiduciary with respect to any of the conduct upon which those claims are based (Ja 12 to Ja 14), *Santomenno v. John Hancock Life Ins. Co.*, Civ. No. 2:10-cv-01655, 2013 WL 3864395 (D.N.J., July 24, 2013). Consequently, the District Court concluded that it was unnecessary to decide whether John Hancock's other arguments in support of its renewed motion to dismiss were barred by FED. R. CIV. P. 12(g)(2)  (Ja 9 n.2).

This appeal seeks review of the District Court's conclusion that John Hancock is not an ERISA fiduciary with respect to the excessive fees it allegedly charges participants in the retirement plans with which it contracts.

## B.    Statement Of Facts

Defendants John Hancock and its affiliates sell 401(k) retirement plans to unsophisticated small and medium size employers through an investment vehicle John Hancock calls a "group annuity contract." (Ja 28 to Ja 32). Plaintiffs were participants in two of these plans through their employers J.H. Berge, Inc. and Scibal Associates (Ja 28).

In marketing these retirement plans, John Hancock offers a selection of mutual funds composed partly of John Hancock and partly of other funds from

5

which an employer may choose (Ja 28). If an employer contracts with John Hancock, the employer becomes the "sponsor" of the plan and selects a group of funds from the ones offered by John Hancock (JA 31 to Ja 32). An individual employee who joins the plan, who under ERISA is a plan participant, then selects a specific fund or funds in which to invest his or her retirement contributions (JA 32).

During the course of a contract with a retirement plan, John Hancock retains the authority, at its sole discretion, to add or delete funds available to plan participants (Ja 56 to Ja 59). John Hancock determines which funds to add or delete from its menu of investment options offered to retirement plans through what it calls a "Fund Check Fund Review and Scorecard" program (Ja 57) and an "Underlying Fund Replacement Regimen" program (Ja 386 to Ja 387). Under the latter program, John Hancock monitors those investment options "Daily," "Monthly/Quarterly" and "Annually." (Ja 63 to Ja 64).

When John Hancock markets one of its retirement plans, it offers the employer, at no additional cost, what John Hancock calls a "Fiduciary Standards Warranty" (Ja 49 to Ja 51). Under this warranty, John Hancock agrees to "restore any losses to the plan and pay litigation costs related to the suitability of our investment process and Fund lineup for 401(k) plans" (Ja 49). John Hancock

6

claims that its "warranty provides 401(k) plan sponsors and participants with specific assurances that its investment selection and monitoring process satisfies fiduciary standards under [ERISA]" (Ja 50). The availability of this warranty is conditioned upon the employer agreeing to include nineteen of John Hancock's own funds in the "menu" of twenty-nine funds that are offered to the employee-participants in its retirement plan (Ja 52 to Ja 53, Ja 59 to Ja 60).

Unlike with other retirement plans, the participants in a retirement plan with which John Hancock contracts do not directly invest in a mutual fund. Rather, each John Hancock investment option is referred to as a "sub-account" (Ja 53). Each "sub-account" overlays, and invests in, a particular mutual fund (Ja 53, Ja 318). Thus, each John Hancock sub-account, with the exception of charging fees in addition to that of the underlying mutual fund, functions no differently than a mutual fund.

On their investment into a particular sub-account, Plaintiffs pay three fees. First, Plaintiffs pay the sub-account's "administrative maintenance charge" (Ja 66, Ja 78 to Ja 79). The specific amount of the administrative maintenance charge for each "sub-account" is not disclosed in the group annuity contracts. Rather, for each investment option in a group annuity contract, John Hancock states that the investment option's "administrative maintenance charge will be no more than 1.00

7

percent annually" (*See, e.g.,* Ja 251).

The second fee participants pay for an investment in a John Hancock group annuity contract is John Hancock's "sales and service" fee (Ja 82). The "sales and service" fees are not mentioned anywhere in the Berge and Scibal contracts. These fees are mentioned only in a booklet distributed to participants entitled "Your Investment Options," which describes each of the investment options in which a participant may invest his or her retirement funds (Ja 66 to Ja 67).

The "Your Investment Options" booklet reflects that the "sales and service" fee for each sub-account investment option is substantial (generally .50%) (Ja 331 to Ja 359). This booklet states that these fees are used to pay "other external providers for the distribution and marketing of the Fund's units" (Ja 67). However, Plaintiffs' complaint alleges that "contrary to this description, the Sales and Service Fees are fees retained by [John Hancock]" as revenue to the company (Ja 67).

Third, Plaintiffs pay the fees of the underlying mutual fund. These fees are not disclosed in the group annuity contracts. The only disclosure in the contracts is that the fees of the mutual fund underlying each sub-account is "determined by the underlying mutual fund company" (Ja 233, Ja 297). The underlying mutual fund company for many of the investment options is John Hancock Investment

8

Management Services, LLC, which is John Hancock's wholly owned subsidiary (Ja 39 to Ja 41, Ja 176 to Ja 195).

By way of example of how the combination of the fees of the underlying mutual funds and John Hancock's additional fees result in what Plaintiffs contend are unreasonable and excessive fees, on an investment into the "JH Columbia Value and Restructuring Investment Option," a plan participant paid the expense ratio of the underlying mutual fund, .94%, plus the overlaying sub-account's administrative maintenance charge of .25% and a sales and service fee of .50% (Ja 202). Thus, while this mutual fund's expense ratio is .94%, by investing in this fund through John Hancock's group annuity product, a participant pays a combined total fee of 1.69%.

The three fees that John Hancock charges for investments in the group annuity contracts are not fixed for the duration of the contracts, but may instead be increased or decreased in John Hancock's sole discretion. Thus, the contract that John Hancock entered into with the employer - sponsor of Plaintiff Santomenno's retirement plan, Berge, states that John Hancock "can change the terms of the Contract without your written agreement, including . . . (t)he fees and/or charges described in this Contract." (Ja 226). The contract between John Hancock's predecessor and the employer-sponsor of the Poley Plaintiffs' retirement plan,

9

Scibal, contains similar provisions (Ja 285, Ja 288, Ja 296). Plaintiffs' complaint alleges that John Hancock has exercised its authority to change fees on various occasions to increase the fees it charges for the investments offered to retirement plans (Ja 198 to Ja 199, Ja 201 to Ja 203).

In addition to the various fees John Hancock charges the participants in the group annuity contract retirement plans over and above the fees charged by the underlying mutual funds, John Hancock obtains additional revenue by entering into "revenue sharing" agreements with the non-John Hancock mutual funds that are included in its retirement plans (JA 62 to Ja 63). Plaintiffs' complaint alleges that John Hancock will only include a non-John Hancock mutual fund as an option in one of its retirement plans if the fund agrees to make such revenue sharing payments to John Hancock (Ja 63).

Plaintiff Danielle Santomenno is a participant in the 401(k) plan of her employer, Berge, and plaintiffs Karen and Barbara Poley are participants in the 401(k) plan of their employer, Scibal, (Ja 38 to Ja 39). At the time of the filing of the complaint, the assets in the Berge and Scibal plans were invested in group annuity contracts sold by John Hancock (Ja 28 to Ja 30). However, during the pendency of the case, the trustees of those plans terminated their contracts with John Hancock (Ja 317, Ja 319).

10

## STANDARD OF REVIEW

In ruling upon a motion to dismiss under FED. R. CIV. P. 12(b)(6), a District Court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On appeal from an order granting a motion to dismiss, this Court's review is "plenary," *Santomenno I*, 677 F.3d at 182. Thus, this Court applies the same standard of review of the adequacy of the complaint as the District Court. This standard applies to all of Plaintiffs' claims.

11

968481.5

## SUMMARY OF ARGUMENT

A party who asserts a claim for breach of fiduciary duty under ERISA must show that the party charged with the breach occupied the role of a fiduciary with respect to an employee benefit plan and was performing a fiduciary function when taking the action subject to the complaint, in this case, the charging of alleged excessive fees.  Plaintiffs claim that John Hancock is an ERISA fiduciary with respect to the retirement plans with which it contracts because it "renders investment advice for a fee" to those plans, 29 U.S.C. § 1002(21)(A)(ii), and "exercises . . . discretionary authority . . . respecting management of [those] plan[s]" 29 U.S.C. § 1002(21)(A)(i).  The fiduciary functions John Hancock performs for the retirement plans that make it an ERISA fiduciary under these subsections include the selection of a group of mutual funds from which an employer establishing a retirement plan must choose and John Hancock's ongoing monitoring of the performance of those funds and replacement of any funds it concludes are no longer suitable for inclusion in a plan.  Plaintiffs claim that John Hancock charges participants in the retirement plans excessive fees for the performance of these fiduciary functions through an investment vehicle called a group annuity contract, by means of which John Hancock imposes substantial fees in addition to the fees of the underlying mutual funds in which participants invest.

12

Although Plaintiffs claim that the charging of those alleged excessive fees would constitute a breach of fiduciary duty even if the fees were fixed before John Hancock became an ERISA fiduciary, the contracts that John Hancock enters into with retirement plans reserve the right to change those fees and John Hancock has exercised this right to increase its fees during performance of the contracts.

13

## ARGUMENT

**PLAINTIFFS' COMPLAINT STATES A CLAIM AGAINST JOHN HANCOCK UNDER ERISA FOR BREACH OF FIDUCIARY DUTY IN CHARGING ALLEGED EXCESSIVE FEES FOR THE PERFORMANCE OF FIDUCIARY FUNCTIONS FOR RETIREMENT PLANS**

At the outset, Plaintiffs emphasize that the District Court dismissed Plaintiffs' complaint on a motion to dismiss under FED. R. CIV. P. 12(b)(6), before Plaintiffs had an opportunity to conduct any discovery. On such a motion, Plaintiffs are only required to show that their complaint "contain(s) sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Under this standard, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

Moreover, applying this standard to a complaint asserting a claim under ERISA, a court must take into account that "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009). Therefore, "[i]f plaintiffs cannot

968481.5

state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Id.*

Therefore, in the current procedural posture of the case, the issue presented by this appeal is whether the complaint, construed in the light most favorable to Plaintiffs, taking into account the difficulty of ascertaining the facts necessary to state an ERISA claim, alleges facts that, if proven, could entitle Plaintiffs to relief for John Hancock's claimed breach of fiduciary duty.

"In every case charging breach of ERISA fiduciary duty . . . the threshold question is . . . whether [the] person [charged with the breach] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Thus, the determination whether a complaint states a claim for breach of a fiduciary duty imposed by ERISA involves a two-step analysis. A court must first determine whether the complaint alleges that the party charged with a breach was a fiduciary. If the complaint so alleges, the court must next determine whether the complaint alleges that the party was acting as a fiduciary when taking the particular action that constituted the claimed breach.

The District Court did not make an express determination whether the

15

complaint alleges that any one or more of the responsibilities that John Hancock performs under the retirement plans it marketed to Berge, Scibal and other employers constitute fiduciary functions under ERISA. Without addressing that question, the District Court jumped to the second step of the analysis required under *Pegram* and dismissed the complaint on the ground that "John Hancock was not acting as a fiduciary when taking any of the actions subject to complaint" (Ja 14). However, John Hancock argued in the brief in support of its renewed motion to dismiss that it was not an ERISA fiduciary under the retirement plans it marketed to Berge, Scibal and other employers, and Plaintiffs assume John Hancock will make that same argument on appeal. Therefore, this brief first sets forth the reasons why the Court should conclude that John Hancock occupied the role of an ERISA fiduciary in performing its various responsibilities under those retirement plans and then sets forth the reasons why the Court should conclude that John Hancock was acting as a fiduciary in charging and collecting excessive fees for the performance of those responsibilities.

## A.    **John Hancock is an ERISA Fiduciary**

ERISA requires an employee benefit plan to designate one or more named fiduciaries who are granted authority to manage the plan. 29 U.S.C. § 1102(a). Although Plaintiffs have not seen copies of the documents establishing the Berge

16

and Scibal retirement plans,[1] Plaintiffs assume those documents name persons selected by the employers, rather than John Hancock, as trustees and thus the named fiduciaries of the plans. Therefore, Plaintiffs do not at this time claim that John Hancock is a named fiduciary under 29 U.S.C. § 1102(a).[2]

ERISA provides that, in addition to the named fiduciaries, other persons who perform advisory and management responsibilities with respect to the administration of an employee benefit plan also may be fiduciaries. The section of ERISA that describes those persons is 29 U.S.C. § 1002(21)(A), which provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advise for a fee . . . or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

---

[1] Because the District Court has twice dismissed Plaintiffs' complaint on motions to dismiss filed under FED. R. CIV. P. 12(b)(6), Plaintiffs have not yet had an opportunity to conduct any discovery.

[2] If the documents establishing the Berge and Scibal or other plans do in fact name John Hancock or its agents as fiduciaries, Plaintiffs reserve the right also to proceed against John Hancock on that basis.

17

Because 29 U.S.C. § 1002(21)(A) describes the other persons, in addition to named fiduciaries, who are treated as ERISA fiduciaries in the disjunctive, Plaintiffs are only required to show that John Hancock has the status of a fiduciary under one of the alternative grounds set forth in this section. *See Edmonson v. Lincoln Nat'l. Life Ins. Co.*, 725 F.3d 406, 420 (3d Cir. 2013); *Bd. of Trs. of Bricklayers & Allied Craftman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, Inc., 237 F.3d 270, 272-73 (3d Cir. 2001).

In determining whether a party is a fiduciary under one or more of the grounds set forth in 29 U.S.C. § 1002(21)(A), a court must keep in mind that "[t]o help fulfill ERISA's broadly protective purposes, Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bk.*, 510 U.S. 86, 96 (1993). Therefore, the alternative grounds for imposition of fiduciary duties set forth in 29 U.S.C. § 1002(21)(A) must be "broadly construed." *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 57 F.3d 1255, 1261 n. 10 (3d Cir. 1995), *cert. denied*, 517 U.S. 1103 (1996).

Plaintiffs contend that John Hancock is an ERISA fiduciary both because it renders investment advice for a fee within the intent of 29 U.S.C. § 1002(21)(A)(ii) and because it exercises discretionary authority or control respecting management

18

968481.5

of the retirement plans of the employers with which it contracts within the intent of 29 U.S.C. § 1002(21)(A)(i) .

### 1.    John Hancock is an ERISA Fiduciary Because it Renders Investment Advice for a Fee to the Retirement Plans with Which it Contracts

Subsection (ii) of 29 U.S.C. § 1002(21)(A) sets forth a simple two-part test for determining fiduciary status under ERISA: (1) a party must "render[ ] investment advice" or have "any authority or authority to do so," and (2) must receive a "fee" for that advice.  29 U.S.C. § 1002(21)(A)(ii).

Plaintiffs' complaint alleges that John Hancock provides various forms of investment advice to retirement plans, including selection of a group of mutual funds from which an employer must choose in establishing the menu of funds to include in its plan, monitoring and reporting about those funds on an ongoing basis through John Hancock's "Fund Check" and "Underlying Fund Replacement Regimen" programs, and replacement of any funds that John Hancock concludes are no longer suitable for inclusion in a plan (Ja 63 to Ja 64),  and that John Hancock "receives fees from the Plaintiffs" for providing these investment services (Ja 64).

Moreover, John Hancock implicitly acknowledges that it performs the role of an investment advisor fiduciary under ERISA by offering the employers with

968481.5

which it contracts a "Fiduciary Standards Warranty," under which John Hancock agrees "to restore any losses to the plan and pay litigation costs related to the suitability of our investment process and Fund lineup for 401(k) plans." (Ja 413). This Warranty warrants, among other things, that the mutual funds contained in John Hancock's investment lineup "[a]re selected and maintained by standards that equal or exceed the ERISA product requirements for investments[.]" (Ja 413). To qualify for this warranty, an employer must include in its retirement plan nineteen of John Hancock's own mutual funds (Ja 52 to Ja 53, Ja 59 to Ja 60). Thus, any employer who wants to obtain a warranty must agree to accept a lineup of mutual funds John Hancock has selected that is heavily oriented towards John Hancock's own funds.

Even though the investment advice John Hancock provided to Plaintiffs and their retirement plans clearly satisfies the literal requirements of 29 U.S.C. § 1002(21)(A)(ii), John Hancock argued before the District Court, and Plaintiffs assume will again argue on appeal, that it is not an ERISA fiduciary under this subsection because its investment advice does not satisfy the additional five factors for determining fiduciary status as an investment advisor that the Department of Labor set forth in 29 C.F.R. § 2510.3-21(c)(l). However, the Department now recognizes that this regulation, which it adopted in 1975 shortly after enactment of

ERISA, engrafts additional requirements for establishing fiduciary status under 29

U.S.C. § 1002(21)(A)(ii) that narrow the plain language of this subsection.

In 2010, the Department proposed adoption of a new regulation that would

take the place of the 1975 regulation, which would more broadly define the

circumstances under which a person can be considered to be a fiduciary based on

the rendering of investment advice to an employee benefit plan.  75 Fed. Reg.

65263 to 65278 (Oct. 22, 2010).  In proposing this new regulation, the Department

noted that the current regulation "significantly narrows the plain language" of 29

U.S.C. § 1002(21)(A)(ii), which "sets out a simple two-part test for determining

fiduciary status: A person renders investment advice with respect to any moneys or

other property of a plan, or has any authority or responsibility to do so; and the

person receives a fee or other compensation, direct or indirect, for doing so."  *Id.* at

65264.  Therefore, the Department concluded that it should adopt a new definition

of "fiduciary" in order to, among other things, "more closely reflect [ ] the broad

statutory definition of the term."  *Id.* at 65275.  However, the Department has not

yet taken final action with respect to this proposed regulation.

If a statute such as ERISA "is silent or ambiguous with respect to [a]

specific issue," a court will defer to any "permissible construction" of that statute

by the agency responsible for its administration.  *Chevron, U.S.A., Inc. v. Nat'l*

21

*Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).  However, if the statute is not silent or ambiguous, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent to Congress." *Id.* at 842-43.

In defining who is a fiduciary subject to the protections ERISA provides to participants in employee benefit plans, Congress has "unambiguously expressed" its intent that any party who "renders investment advice for a fee" is an ERISA fiduciary.  Thus, as the Department of Labor now recognizes, it cannot, as the agency responsible for ERISA's administration, limit the application of ERISA's "broadly protective purposes." *John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bk.*, 510 *U.S.* at 96.  Therefore, there is no need for the Court to consider the additional factors for determining fiduciary status set forth in 29 C.F.R. § 2510.3-21(c)(1).

Moreover, even if 29 C.F.R. § 2510.3-21(c)(1) reflected a permissible construction of 29 U.S.C. § 1002(21)(A)(ii), the allegations of Plaintiffs' complaint would satisfy the requirements of that regulation. These requirements, as the Department synthesized in comments accompanying the proposed new regulation, are that the alleged fiduciary "(1) renders advice as to the purchase, sale, or value of securities or other property, (2) on a regular basis, (3) pursuant to a mutual

22

agreement, arrangement or understanding, written or otherwise, between such person and the plan or a plan fiduciary, that (4) the advice will serve as a primary basis for investment decisions with respect to plan assets, and that (5) the advice will be individualized based on the particular needs of the plan." 29 Fed.Reg. 65270.

The allegations of Plaintiffs' complaint clearly satisfy these requirements. The first requirement -- that the alleged fiduciary "renders advice" regarding the "purchase . . . of securities" -- is satisfied by the allegation that John Hancock markets group annuity contracts to employers that include a menu of mutual funds the employer sponsor may offer its employees and reports to the employer sponsor on a regular basis concerning the performance of the funds it selects. (Ja 30 to Ja 31); the second requirement -- that the alleged fiduciary renders that advice "on a regular basis" -- is satisfied by the allegation that John Hancock engages in ongoing monitoring and reporting concerning the performance of the funds (Ja 63 to Ja 64); the third requirement -- that this investment advice be provided "pursuant to a mutual agreement" with the plan fiduciary -- is satisfied by the allegation that John Hancock provides this investment advice pursuant to contracts entered into with employer sponsors such as Berge and Scibal (Ja 28); the fourth requirement -- that this advice serve as the "primary basis for investment decisions" -- is satisfied

23

968481.5

by the allegations that John Hancock selects the mutual funds from which

employer plan sponsors must choose for their retirement plans, reserves the right in

its sole discretion to change those funds based on the "Fund Check" and

"Underlying Fund Replacement Regimen" programs, and seeks to induce sponsors

to select a menu of funds heavily weighted toward John Hancock's own funds by

offering its Fiduciary Standards Warranty (Ja 28, Ja 49 to Ja 51, Ja 59 to Ja 60);

and the fifth requirement -- that the advice must be "individualized based on the

particular needs of the plans" -- is satisfied by the allegation that John Hancock

provides evaluations of the retirement plans investment options "on a Plaintiff Plan

by Plaintiff Plan basis" (Ja 64; *see also* Ja 382).

For all these reasons, Plaintiffs' complaint sufficiently alleges that John

Hancock "renders investment advice for . . . fee[s]," 29 U.S.C. § 1002 (21)(A)(ii),

which Plaintiffs claim are excessive.

### 2. John Hancock is Also an ERISA Fiduciary Because it Exercises Discretionary Authority Respecting Management of the Retirement Plans With Which it Contracts

Under subsection (i) of 29 U.S.C. § 1002 (21)(A), a party is a fiduciary to an

employee benefit plan under ERISA if it "exercises **any** discretionary authority or

discretionary control respecting management of such plan[.]" (Emphasis added).

Thus, by the plain terms of this subsection, the exercise of "any" discretionary

24

authority respecting management of an employee benefit plan is sufficient for a party to acquire fiduciary status under ERISA.

Plaintiffs' complaint alleges that John Hancock exercises discretionary authority regarding the Scibal, Berge and other employee retirement plans in a number of significant respects. The complaint alleges that John Hancock not only establishes the "menu" of mutual funds from which a retirement plan must select but also "retains the authority, at its discretion, to add or delete the available investment options" (Ja 56), and has frequently exercised this discretionary authority (Ja 56 to Ja 59). The complaint also alleges that John Hancock exercises its discretionary authority in the management of the Scibal, Berge and other retirement plans "[b]y negotiating and/or extracting revenue sharing payments" from the non-John Hancock mutual funds it includes in the menu of funds a plan may select for its participants (Ja 62). Most significantly, the complaint alleges that John Hancock exercises discretionary authority by establishing and, in its sole discretion, changing the fees it charges for the investment advice and other services it provides retirement plans (Ja 53, Ja 65 to Ja 67, Ja 139 to Ja 159).

John Hancock's discretionary authority with respect to the retirement plans with which it contracts and its exercise of that authority is also reflected in the Berge and Scibal contracts. John Hancock's contract with Berge expressly stated

25

that "we can change the terms of the contract without your written agreement,

including but not limited to . . .: (a) the addition, removal and/or substitution of

investment options offered under the Contract [and] (b) the fees and/or changes

described in this Contract" (Ja 226).  And with specific reference to the

administrative maintenance charge, which is one of the fees imposed by John

Hancock that Plaintiffs claim was excessive and therefore breached John

Hancock's fiduciary duties to Plaintiffs and their retirement plans (Ja 66, Ja 78 to

Ja 79), the contract states that "[w]e may **at our sole discretion**, change the

maximum administrative maintenance charge at any time provided we give you

three months advance written notice of the intended change (Ja 232 (emphasis

added)).  And since this provision only requires three month notice of a change in

the "maximum" administrative maintenance charge, the contract may be read to

authorize John Hancock to change any administrative maintenance fee that is less

than the maximum of 1.0% (see Ja 233), without any notice to all, and the tables

attached to the complaint show that John Hancock has exercised this discretionary

authority to increase the administrative maintenance charge for some investments

(see, e.g. Ja 198 to Ja 199, Ja 201 to Ja 203).

Other courts have recognized that the exercise of such discretionary

authority subjects a party to the obligations of an ERISA fiduciary.  *See, e.g., F. H.*

26

*Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1258-59 (2d Cir. 1987); *Ed Miniat, Inc. v. Globe Life Ins. Group, Inc.*, 805 F.2d 732, 737-38 (7th Cir. 1987), *cert. denied*, 482 U.S. 915 (1987); *Healthcare Strategies, Inc. v. ING Life Ins. Co.*, Civ. No. 11-00282-No. 11-00282-WGY, 2013 WL 4446919 at *6, ____ F. Supp. 2d ___, ___ (D. Conn. Aug. 9, 2013); *Glass Dimensions, Inc. v. State St. Bank & Tr. Co.*, 931 F. Supp. 2d 296, 304 (D. Mass. 2013); *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189, 196-99 (D. Mass. 2008); *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 166 (D. Conn. 2006). For example, in *Charters*, which involved the same kind of John Hancock group annuity contracts as this case, the Court concluded that "[i]f . . . an agreement gives an insurance company control over factors that determine the amount of its compensation, that company becomes an ERISA fiduciary with respect to its compensation[,]" and "[b]ecause the [Group Annuity] Contract gave Hancock discretionary authority over its fees it acquired a fiduciary status with respect to those fees." 583 F.Supp. 2d at 197. The Scibal and Berge contracts contain provisions identical to the one the *Charters* Court found to establish fiduciary status (Ja 239, Ja 297). The Court in *Charters* further concluded that John Hancock's ability to add and delete investment options from a plan's investment menus also rendered it a fiduciary. *Id.* at 197-98.

27

968481.5

Under these cases, John Hancock's exercise of its discretionary authority to change the mutual funds included in the retirement plans to which it renders investment advice, without the plan sponsor's consent, to establish the amount of the revenue sharing non-John Hancock funds must pay to John Hancock, and most significantly, to determine the amount of its own fees, constituted the exercise of "discretionary authority" respecting the management of those plans within the intent of 29 U.S.C. § 1001(21)(A)(i).  Moreover, Plaintiffs note that even if their complaint did not allege that John Hancock has exercised this discretionary authority, the complaint could still be found to allege that John Hancock was a fiduciary under 29 U.S.C. § 1001(21)(A)(iii), which confers fiduciary status on those "who have actually been granted discretionary authority, regardless of whether such authority is ever exercised."  *Olson v. E.F. Hutton & Co.*, 957 F.2d 622, 625 (8th Cir 1992); *see also Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006); *Healthcare Strategies, Inc. v. ING Life Ins. Co.*, 2013 WL 4446919 at *5, ____F. Supp. 2d at ___.

John Hancock argued in the District Court, and Plaintiffs assume will also argue on appeal, that *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010), supports its position that it is not an ERISA fiduciary under 29 U.S.C. § 1001(21)(A)(i).  In *Hecker*, the Seventh Circuit held

28

that simply providing advice to a named fiduciary, who retains ultimate authority over the selection of investment options, does not by itself constitute an exercise of the discretionary authority required to establish fiduciary status under this subsection. *Id.* at 583-584. However, the Court in *Hecker* distinguished *Haddock v. Nationwide Fin. Servs.*, 419 F. Supp. 2d 156, on the ground that "the service provider in that case had the authority to delete and substitute mutual funds from the plan without seeking approval from the named fiduciary." 556 F.3d at 584. In this case, as in *Haddock* and unlike in *Hecker*, John Hancock retained the authority to delete and substitute funds from a retirement plan without seeking approval from the named fiduciary. Moreover, it frequently exercised this authority. *Leimkuehler v. American United Life Insurance Co.*, 713 F.3d 905, 911-12 (7th Cir. 2013), upon which John Hancock also relies, followed *Hecker* and is distinguishable on similar grounds.[3] Furthermore, there is no indication in either

_____

[3] The sole issue presented in *Leimkuehler* was whether a company that renders investment, record-keeping, and other administrative services to 401(k) plans "act[s] as a fiduciary for purposes of 29 U.S.C. § 1002(21)(A) when it makes decisions about, or engages in, revenue sharing." 713 F.3d at 908. Although Plaintiffs do not contend that John Hancock's revenue sharing activities, considered in isolation from the performance of its other fiduciary functions, would make John Hancock an ERISA fiduciary, or that such revenue sharing activities constitute a *per se* violation of ERISA, Plaintiffs contend that those activities, considered together with John Hancock's performance of its other fiduciary functions, reinforces the conclusion that John Hancock exercises the discretionary authority required to attain the status of an ERISA fiduciary under

29

*Hecker* or *Leimkeuhler* that the investment advisor retained the discretionary authority to increase its own fees during the term of the contract, and no breach of fiduciary duty claim was asserted with respect to the amount of those fees.

John Hancock also argued before the District Court that this Court's decision in *Renfro v. Unisys Corp.,* 671 F.3d 314 (3d Cir. 2011), supports the contention that John Hancock does not exercise the discretionary authority over retirement plans that is required to attain the status of a fiduciary under 29 U.S.C. § 1002(21)(A)(i). However, in *Renfro,* the alleged investment advisor fiduciary, Fidelity, "concede[d] it was a fiduciary under the plan[,]" in that case "because [Fidelity] was a directed trustee with respect to certain assets with administrative functions." 671 F.2d at 322. Therefore, the Court had no occasion to consider whether Fidelity also would have qualified as a fiduciary under any other section of ERISA, such as 29 U.S.C. § 1002(21)(A)(i), and thus *Renfro* is not relevant with respect to this issue. The sole issue in dispute in *Renfro* was whether Fidelity and its affiliates were "fiduciaries with respect to the challenged conduct," which in that case allegedly consisted of "selecting and retaining investment options in the

---

U.S.C. § 1002(21)(A)(i). If there is a remand, Plaintiffs also reserve the right to argue that the additional revenue John Hancock receives through revenue sharing should be taken into account in considering the alleged aggregate excessiveness of its fees.

30

968481.5

[employer's] plan." *Id.* Plaintiffs turn to that issue, as applied to their claim that John Hancock charges excessive fees for the performance of its fiduciary functions, in the next subsection of this brief.

**B.    John Hancock is Acting as a Fiduciary When it Charges Alleged Excessive Fees for the Performance of Fiduciary Functions for the Retirement Plans With Which it Contracts, and Therefore, John Hancock is Subject to a Claim for Breach of Fiduciary Duty Based on Those Alleged Excessive Fees**

Preliminarily, Plaintiffs note that the duty of an ERISA fiduciary to charge only reasonable fees for the performance of its fiduciary functions is imposed by 29 U.S.C. § 1104(a)(1)(A), which requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . (i) providing benefits to participants and beneficiaries; and (ii) defraying reasonable expenses of administering the plan." These duties are construed in light of the common law of trusts. *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). One fundamental principle of that common law is that a trustee or other fiduciary is only entitled to "reasonable compensation" for its services. RESTATEMENT (THIRD) OF TRUSTS, § 38(1) (2001).

As noted at the outset of this point, the District Court did not reach any conclusion as to whether John Hancock was performing the functions of an ERISA

31

fiduciary in rendering investment advice and exercising various discretionary authority with respect to management of the retirement plans with which it contracts. Instead, the District Court concluded that even if John Hancock is an ERISA fiduciary, Plaintiffs' complaint should be dismissed because it failed to allege that John Hancock "was 'acting as a fiduciary . . . when taking the action subject to complaint.' *Pegram*, 530 U.S. at 226," (Ja 12), that is, charging alleged excessive fees for performing fiduciary functions. In reaching this conclusion, the District Court placed heavy reliance upon this Court's decision in *Renfro,* stating as its reason for rejecting Plaintiffs' arguments based on decisions in other circuits that "courts in this District have the benefit of a Third Circuit opinion that squarely addresses the fiduciary status of a service provider in a 401(k) fee case. *See Renfro*, 671 F.3d at 314." (Ja 13).

Although Plaintiffs do not believe that *Renfro* is the most relevant precedent, they begin their discussion with *Renfro* because it is a decision of this Court and it was heavily relied upon by the District Court. The sole breach of fiduciary duty claim asserted in *Renfro* was that a directed trustee of a retirement plan, Fidelity, had "inadequately selected a mix and range of investment options to include in the plan." 671 F.3d at 318. The large employer who had established the retirement plan, named Unisys, entered into a trust agreement with Fidelity under which

32

968481.5

Fidelity, as a directed trustee, "agreed to provide administrative services bundled with . . . investment options." *Id.* Although some of those investment options were Fidelity mutual funds, "[t]he agreement did not prohibit Unisys from adding non-Fidelity options to its plan, and administering them itself, or from contracting with another company to administer non-Fidelity investments." *Id.* at 319. The fees Fidelity charged for investments in its mutual funds were the same retail fees usually charged by its individual mutual funds, which ranged from 0.1% to 1.21%. *Id.* Plaintiffs alleged that "the fees associated with each retail mutual fund [were] excessive in light of the services rendered as compared to other, less expensive, investment options not included in the plan." *Id.*

In concluding that Fidelity was not a fiduciary with respect to the challenged conduct of selecting the Fidelity investment options included in the Unisys plan, the Court stated, based on its analysis of the language of the trust agreement, that "Fidelity's limited role as a directed trustee . . . does not encompass the activities alleged as a breach of fiduciary duty – the selection and maintenance of the mix and range of investment options included in the plan." *Id.* at 323. The Court also noted that "Fidelity had no contractual authority to control the mix and range of investment options, to veto Unisys's selections, or to constrain Unisys from including other investment options in the plan administered by an entity other than

33

Fidelity." *Id.*

Plaintiffs' complaint alleges that John Hancock plays an entirely different role with respect to the retirement plans with which it contracts than the one Fidelity played with respect to the Unisys plan. Unlike Fidelity's role in *Renfro*, John Hancock does not serve as the directed trustee but rather as the investment advisor to retirement plans. In this role, again unlike Fidelity's limited role in *Renfro*, John Hancock selects the full range of mutual funds from which an employer must choose in establishing the menu of funds to include in its plan and thereafter monitors those funds on an ongoing basis through its "Fund Check" and "Underlying Fund Replacement Regimen" programs (Ja 63 to Ja 64). Moreover, John Hancock reserves the right, in its sole discretion, to add or delete the funds included in a plan based on that monitoring (Ja 226). In addition, John Hancock encourages employers to select a menu of mutual funds that is heavily oriented towards John Hancock's own funds, by offering employers who make this selection a "fiduciary warranty" under which John Hancock agrees to reimburse the employer for any liability it may incur as a result of offering the John Hancock lineup of funds to its employees (Ja 59 to Ja 60).

Furthermore, unlike in *Renfro*, in which the fees Fidelity charged Unisys employees who invested in Fidelity mutual funds were the same fees it charged

34

other retail investors, *see* 314 F.3d at 319, the fees that John Hancock charges,

through its group annuity contracts, include not only the fees of the underlying

mutual funds but also John Hancock's administrative maintenance and sales and

service fees, which Plaintiffs claim are excessive.  The complaint further alleges

that John Hancock reserves the authority to change those fees, and the tables

attached to the complaint show that John Hancock has exercised this authority to

increase its fees after entering into  contracts to provide investment advice and

management services to employers (*see, e.g.,* Ja 198 to Ja 199, Ja 201 to Ja 203).

Before completing their discussion of *Renfro*, Plaintiffs note that the District

Court opinion quotes a statement in *Renfro* that "a service provider 'owes no

fiduciary duty with respect to the negotiation of its fee compensation.'  *Renfro*, 671

F.3d at 324."  (Ja 12).  However, this statement is not contained in section III(A) of

the *Renfro* opinion, which rejected the breach of fiduciary duty claim asserted in

that case, but rather was part of *Renfro's* preliminary discussion, in section III(B),

of a co-fiduciary liability claim, which the Court ultimately rejected on the

unrelated ground that for such a claim to be maintainable "the fiduciary must know

the other person is a fiduciary with respect to the plan, must know that he

participated in the act that constituted a breach, and must know that it was a

breach[,]" and that the complaint in *Renfro* did not allege such required

968481.5

knowledge. *Id.* at 324-25.  Therefore, the statement from *Renfro* quoted by the District Court was dictum and for that reason is not binding upon this panel. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 116 (3d Cir. 2010).

Moreover, even if it were a holding, the Second Circuit decision that the *Renfro* court cited in support of this statement expressly recognized that "after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation." *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d at 1259. Plaintiffs' complaint alleges that John Hancock had the authority under its contracts with the Scibal, Berge and other retirement plans to change its fees during the course of performance of those contracts  (see Ja 226, Ja 288, Ja 296), and that it exercised this authority (Ja 198 to Ja 199, Ja 201 to Ja 203). Furthermore, after John Hancock entered into those contracts, it began charging participants a Sales and Service fee that was not authorized by the contracts.  Thus, while all the fees at issue in *Renfro* were negotiated in advance and Fidelity retained no authority to change those fees, some of the fees John Hancock charges are not authorized at all by its contracts with the retirement plans and John Hancock retains the right to change the fees that are authorized by the contracts.

36

Consequently, unlike in *Renfro*, the "action[s] subject to complaint,"
*Pegram*, 530 U.S. at 226, in this case directly relate to the fiduciary functions of
rendering investment advice to employee retirement plans and exercising
discretionary authority with respect to the management of those plans, particularly
the selection of mutual funds in a manner that serves the interests of John Hancock
rather than employee participants of the plan and the charging of excessive fees for
investments in those funds. These "actions affect the amount of benefits retirement
plan participants will receive[,]" *John Hancock Mut. Life Ins. Co. v. Harris Tr. &
Saving Bank*, 510 U.S. at 96, and thus subject John Hancock to regulation as an
ERISA fiduciary.

Although *Renfro* does not control this case because John Hancock's role as
an investment advisor to the retirement plans with which it contracts is totally
different from Fidelity's role as a directed trustee in *Renfro*, there are decisions
from other jurisdictions, as the District Court recognized, in which courts
"presented with nearly identical facts" and the "same issues" as this case (Ja 13)
have concluded that the complaints presented viable ERISA breach of fiduciary
duty claims. For example, *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp.
2d 189, involved the same type of John Hancock retirement plans marketed to
small and medium size employers as the plans challenged by Plaintiffs, including

37

the offering of group annuity contracts, for which employees were charged not only the fees of the underlying mutual funds but also an administrative maintenance charge imposed by John Hancock.  In concluding that John Hancock was an ERISA fiduciary that was subject to a breach of fiduciary duty claim based on the alleged charging of excessive fees, the District Court stated:

> Hancock is a fiduciary because the Contract gave it discretionary authority to determine the amount of its compensation.  Under the terms of the Contract, Hancock had the sole authority to set the administrative maintenance charge, limited only by a maximum charge for each sub-account . . .. Because the Contract gave Hancock discretionary authority over its fees it acquired a fiduciary status with respect to those fees.

[*Id.* at 197].

The Court held that John Hancock's ability to substitute investment options made available to the retirement plans, subject only to the employer's right to cancel its contract with John Hancock, also made Fidelity a fiduciary to the plans against whom a claim for breach of fiduciary duty could be maintained. *Id.* at 198-99.

Similarly, the District Court in *Santomenno v. Transamerica Life Ins. Co.*, Civ. No. 12-02782, 2013 WL 603901 (C.D. Cal., Feb. 19, 2013)[4] denied a motion to dismiss a complaint that asserted substantially the same breach of fiduciary duty claims based on group annuity contracts similar to the ones challenged by

---

[4]  Because *Transamerica* was decided after January 1, 2007, it may be cited

968481.5

Plaintiffs' complaint, under which Transamerica charged its own substantial fees in addition to the fees of the underlying mutual funds in which retirement plan participants invested. *Id.* at *1 to *2. Although Plaintiffs realize that *Transamerica* is only an unpublished District Court opinion from another circuit, they believe that the analysis in that opinion is so directly on point with respect to the issues presented by this appeal that it warrants discussion. In rejecting Transamerica's argument, similar to one of the arguments John Hancock advances in this litigation, that it could not be subjected to a claim for breach of fiduciary duty for charging excessive fees because those fees were negotiated before it became a fiduciary, the Court stated:

> The *reductio ad absurdum* of the principle that a future fiduciary is not responsible for the terms of its own compensation is that the fiduciary could negotiate for a fee of 99% of each separate account and still be considered to be fulfilling its fiduciary duty of managing the separate account simply because it negotiated this fee by contract . . . To hold otherwise would allow fiduciaries to contract themselves out of their duties, so long as it was done prior to the assumption of those duties.
>
> Because [Transamerica] is negotiating to assume the high duties of an ERISA fiduciary, it must be accountable to the beneficiaries of the plan for the reasonableness of its compensation.
>
> [*Id.* at *6]

And in rejecting Transamerica's argument, also similar to one of the

in this brief. Fed. R. App. P. 32.1(a).    39
968481.5

arguments John Hancock advances in this litigation, that its negotiations with

employers regarding fees had been "arms length," the Court stated:

> The contract negotiations at issue here depart from the typical arm's
> length negotiation in several respects. First, the subject matter of the
> contract is fiduciary duty: the duty the employer has and the duty
> [Transamerica] will assume. Importantly, these duties do not extend
> between the parties who are negotiating the contract. Instead, the duty
> is owed to the Plan and the beneficiaries, who are absent and
> vulnerable.
>
> Additionally, the absent party . . . will bear a burden under the
> contract. It appears to the court that [Transamerica] and the employer
> are not bargaining for [Transamerica] to provide services and for the
> employer to pay a fee, but instead for [Transamerica] to provide
> services and for a fee to be assessed on the employees' retirement
> accounts. If this is true, it is not a traditional arm's length negotiation
> where the parties are adverse and pursuing independent interests . . .
>
> One example of the non-adversarial nature of these negotiations is
> [Transamerica's] Fiduciary Warranty . . . Based on the allegations
> before the court, it appears that the Fiduciary Warranty amounts to
> insurance provided by [Transamerica] to employers against law suits
> by employees for breach of fiduciary duty, but this insurance is paid
> for by the fees assessed on the employees' assets . . .. Thus, instead of
> an insurance company bargaining with a party seeking to obtain the
> best rate for itself in its insurance purchase, the insurer is bargaining
> with a party who is not in fact bearing the financial burden of the
> insurance, though it will reap the benefits.
>
> [*Id.* at *6 to *7]

See also *IT Corp. v. Gen'l Am. Life Ins. Co*, 107 F.3d 1415, 1418 (9th Cir. 1997)

(stating that a "fiduciary's contract with an employer cannot get it off the hook

with the employees who participate in the ERISA plan . . . [because the employees]

40

968481.5

did not sign the contract exonerating the fiduciary"), *cert. denied*, 511 U.S. 1068 (1998).

As an alternative ground for concluding that Transamerica was subject to a claim for breach of fiduciary duty, the District Court held that even if Transamerica's initial establishment of its fees had been insulated from such a claim, the fact that Transamerica retained the right to change those fees during the course of performance of its contracts would subject it to a breach of fiduciary duty claim for charging excessive fees. *Santomenno v. Transamerica Life Ins. Co.*, 2013 WL 603901, at *7 to *8. As previously discussed, Plaintiffs' complaint alleges, and the Berge and Scibal contracts demonstrate, that John Hancock retains the same kind of discretion to increase its fees during the performance of one of its contracts with a retirement plan (Ja 226, Ja 288, Ja 296), and that it has done so on a number of occasions (Ja 198 to Ja 199, Ja 201 to Ja 203).

Moreover, even the Seventh Circuit, which was the source of the doctrine that a fiduciary cannot be held liable for breach of fiduciary duty for charging alleged excessive fees established before it became a fiduciary, *see Schulist v. Blue Cross of Iowa*, 717 F.2d 1127, 1132 (7th Cir. 1983),[5] recognizes that a fiduciary who retains the authority to change its fees or other terms of an employee benefit

---

[5] Significantly, the alleged excessive fees involved in *Schulist* had been

41

plan after becoming a fiduciary may be subject to a breach of fiduciary duty claim. *Midwest Comm. Health Serv., Inc. v. Am. United Life Ins. Co.*, 255 F.3d 374, 376-79 (7th Cir. 2001); *Ed Miniat v. Globe Life Ins. Group*, 805 F.2d at 737-38; *Chicago Bd. Options Exch., Inc. v. Comm. Gen. Life Ins. Co.*, 713 F.2d 254, 260 (7th Cir. 1983). Therefore, even if John Hancock would have been insulated from liability for breach of fiduciary duties for the alleged excessive fees it established before becoming an ERISA fiduciary (and Plaintiffs contend that it is not for the reasons previously stated), it is subject to such liability in this case because it reserved the right under the contracts it entered into with Scibal, Berge and other employers to change those fees, and Plaintiffs' complaint alleges that it exercised this right.

In summary, John Hancock's selection of the group of mutual funds to be offered to the retirement plans with which it contracts, its ongoing monitoring of those funds and unilateral authority to replace funds it concludes are no longer suitable for inclusion in a plan, and its offer of a "Fiduciary Standards Warranty" to employers who select a group of funds heavily oriented towards John Hancock's own funds, constitute the performance of fiduciary functions with respect to those retirement plans, and the allegation that John Hancock charges excessive fees for

competitively bid rather than negotiated. *See* 717 F.2d at 1129.

the performance of those fiduciary functions states a claim for breach of fiduciary duty. Although such a claim would be stated even if John Hancock's fees were fixed as of the time it contracted with a retirement plan, Plaintiffs' complaint alleges that John Hancock reserves the right to change its fees during the course of performance of its contracts and that John Hancock has exercised this authority to increase its fees after contracting with retirement plans. Therefore, even if a fiduciary were insulated from liability for charging and collecting an excessive fee it negotiated before becoming a fiduciary, Plaintiffs' complaint would nevertheless state a claim that John Hancock breached its fiduciary duties by charging excessive fees.

968481.5

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the order of the District Court granting John Hancock's renewed motion to dismiss should be reversed and the case remanded to the District Court.

Respectfully submitted,

**SZAFERMAN, LAKIND,**
**BLUMSTEIN & BLADER, P.C.**

/Stephen Skillman

44

## CERTIFICATION AS TO BAR MEMBERSHIP

The undersigned hereby certifies that the attorney whose name appears on this brief was duly admitted to the Bar of the United States Court of Appeals for the Third Circuit and is presently admitted as a member in good standing at the Bar of said Court.

/Stephen Skillman

## CERTIFICATION OF COMPLIANCE

I hereby certify that:

1.     This brief complies with the length limitations of Fed. R. App. P. 32(a)(7) because the brief contains 11,207 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and does not exceed the 14,000 word limit;

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using Microsoft Word 2010 software and it is in Times New Roman proportionally-spaced typeface that is at least 14 points;

3.     The text of the PDF brief is identical to the text of the paper copies of the brief; and

4.     The electronic PDF file has been electronically scanned by Symantec virus detection program prior to transmission and no virus was detected.

/Stephen Skillman

45

## CERTIFICATION OF FILING AND SERVICE

I certify that on this 13th day of January, 2014 true and correct copies of Appellant's Brief and Joint Appendix, Volumes I, II, III and IV were filed electronically with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I further certify that I served the Brief and Joint Appendix on the counsel listed below through the CM/ECF system:

> Daniel Condon
> Goodwin Procter, LLP
> Exchange Place
> Boston, MA 02109
>
> Brian J. McMahon
> J. Brugh Lower
> Gibbons, P.C.
> One Gateway Center
> Newark, NJ 07102

I further certify that I served the Brief and Joint Appendix by U.S. Mail on the counsel below:

> James O. Fleckner
> Alison V. Douglas
> Goodwin Procter, LLP
> Exchange Place
> Boston, MA 02109

968481.5

I further certify that on this 13th day of January, 2014 an original and six (6) copies of the Brief and Volume I of the Appendix and four (4) copies of Appendices Volumes II, III and IV were forwarded by regular United States Postal Service to the Clerk of the Court, United States Court of Appeals for the Third Circuit, 21400 United States Courthouse, 601 Market Street, Philadelphia, PA 19106-1790.  Also on that date, I certify that I served the Brief on the counsel listed below

Stephen Skillman

968481.5

## UNITED STATES COURT OF APPEALS
## THIRD CIRCUIT

### Docket No. 13-3467

DANIELLE SANTOMENNO, for the use and benefit of the John Hancock Trust and the John Hancock Funds II; KAREN POLEY and BARBARA POLEY, for the use and benefit of the John Hancock Funds II; DANIELLE SANTOMENNO, KAREN POLEY and BARBARA POLEY individually and on behalf of ERISA employee benefit plans that held, or continue to hold, group variable annuity contracts issued/sold by John Hancock Life Insurance Company (U.S.A.), and the participants and beneficiaries of all such ERISA covered employee benefit plans; and DANIELLE SANTOMENNO individually and on behalf of any person or entity that is a party to, or has acquired rights under, an individual or group variable annuity contract that was issued/sold by John Hancock Life Insurance Company (U.S.A.)where the underlying investment was a John Hancock proprietary fund contained in the John Hancock Trust

Appellants,

vs.

John Hancock Life Insurance Company (U.S.A.), John Hancock Investment Management Services, LLC, John Hancock Funds, LLC, and John Hancock Distributors, LLC,

Appellees.

---

ON APPEAL FROM AN ORDER OF DISMISSAL ENTERED IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY, NEWARK AT NO. 2:10-cv-01655 (WJM)(MF)

---

### JOINT APPENDIX - VOLUME I
### Ja-1 to Ja-18

---

SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Rd, Ste 200
Lawrenceville, N.J. 08648
BY: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400

Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
BY: Moshe Maimon, Esquire
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorneys For Plaintiffs

# TABLE OF APPENDIX

## Volume I

Notice of Appeal, Docket No. 86, Filed August 9, 2013 . . . . . . . . . . . . . . . . . Ja-1

Order Dismissing Plaintiffs' Complaint With Prejudice,
    Docket No. 85, Filed July 24, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-4

Opinion Dismissing Plaintiffs' Complaint With Prejudice
    By Honorable William J. Martini, U.S.D.J., Dated July 24, 2013
    Docket No. 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-5

Docket, <u>Santomenno v. John Hancock Life Insurance Company,</u>
    No. 2:10-cv-01655-WJM-MF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-15

## Volume II

Plaintiffs' Second Amended Complaint (abbreviated), Docket No. 34,
    Filed October 22, 2010 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-19

## Volume III

Defendant's Notice of Renewed Motion to Dismiss
    The Second Amended Complaint,
    Docket No. 71, Filed December 14, 2012 . . . . . . . . . . . . . . . . . . . . . Ja-208

Certification of Alison V. Douglass in Support of Defendant's
    Renewed Motion to Dismiss,
    Docket No. 71, Filed December 14, 2012 . . . . . . . . . . . . . . . . . . . . . Ja-211

    Exhibit A - Group Annuity Contract Between JHUSA and the
    Trustees of J&H Berge, Inc. 401(k) Profit Sharing Plan,
    dated March 24, 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-214

    Exhibit B - Allocated Retirement Account Group Annuity Contract
    Between the Manufacturers Life Insurance Company (U.S.A.) and
    the Trustees of Scibal Associates, Inc. 401(k) Plan,
    dated January 8, 2004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-273

Exhibit C - Letter from Steven N. Krupp, Dated May 11, 2010,
Terminating The J&H Berge Contract . . . . . . . . . . . . . . . . . . . . . . . . Ja-316

Exhibit D - Letter from John J. McSorley, Dated December 30, 2009,
Terminating the Scibal Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-318

Exhibit E - JHUSA Booklet Entitled, "Your Investment Options" . . Ja-320

**Volume IV**

Exhibit F - Transcript of Hearing On Plaintiffs' Appeal,
Dated February 9, 2012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-367

Declaration of Robert L. Lakind in Support of Plaintiffs' Opposition to
Defendant's Renewed Motion to Dismiss (abbreviated), Docket No. 72,
Filed January 25, 2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-375

Exhibit A to L Omitted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-380

Exhibit M - John Hancock Document, Entitled "Fund Check: John
Hancock's Fund Review and Scorecard" . . . . . . . . . . . . . . . . . . . . . Ja-381

Exhibit N - Relevant pages from a John Hancock document titled,
"JH Signature Fund Information Guide," dated September 30, 2009    Ja-384

Exhibit O - The "John Hancock" "updates" document . . . . . . . . . . . Ja-389

Exhibit P - JHUSA document titled, "Fiduciary Responsibility: An
Employer's Guide" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Ja-391

Exhibit Q - Relevant pages of a JHUSA  document titled, "Navigating
the Waters: A Fiduciary Handbook for Retirement Plan Trustees" . . Ja-409

Exhibit R - JHUSA  document titled, "Introducing the John Hancock
USA Fiduciary Standards Warranty" . . . . . . . . . . . . . . . . . . . . . . . . Ja-412

Exhibit S - Department of Labor Advisory Opinion  2005-22A . . . . Ja-415

Exhibit T - Trademark/Service Mark Application, Principal Register
and Publication & Issue Review Complete identifying JHUSA as the
owner of the trademark, "Fund Check" ....................... Ja-418

Exhibit U - Danielle Santomenno's April 1, 2010 to June 21, 2010
JHUSA account statement, redacted ........................ Ja-429

Reply Certification of Alison V. Douglass in Support of Defendant John Hancock
Life Insurance Company's Renewed Motion To Dismiss,
Docket No. 73, Filed February 15, 2013 ..................... Ja-432

Exhibit A - Danielle Santomenno's quarterly statements (redacted)
for participation in the J&H Berge, Inc. 401(k) Profit Sharing
Plan for the period April 1, 2009 to June 30, 2009 ......... Ja-434

Exhibit B - Stipulation of Dismissal and Judgment Entered in the
matter of *Charters v. John Hancock Life Insurance Company
(U.S.A.),et al., Civ. Ni. 07-11371 (D.Mass. Aug. 21, 2009)* ... Ja-440

SZAFERMAN, LAKIND,
   BLUMSTEIN & BLADER, P.C.
101 GROVERS MILL ROAD, SUITE 200
LAWRENCEVILLE, NEW JERSEY 08648
BY: Arnold C. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, New Jersey 08648
BY: Moshe Maimon, Esquire
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorneys For Plaintiffs

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

District Court
Docket No. 2:10-cv-01655 (WJM) (MF)

DANIELLE SANTOMENNO, for the use and benefit of the John Hancock
Trust and the John Hancock Funds II; KAREN POLEY and BARBARA POLEY,
for the use and benefit of the John Hancock Funds II; DANIELLE
SANTOMENNO, KAREN POLEY and BARBARA POLEY individually and on
behalf of ERISA employee benefit plans that held, or continue to
hold, group variable annuity contracts issued/sold by John Hancock
Life Insurance Company (U.S.A.), and the participants and
beneficiaries of all such ERISA covered employee benefit plans; and
DANIELLE SANTOMENNO individually and on behalf of any person or
entity that is a party to, or has acquired rights under, an
individual or group variable annuity contract that was issued/sold
by John Hancock Life Insurance Company (U.S.A.)where the underlying
investment was a John Hancock proprietary fund contained in the
John Hancock Trust

vs.

John Hancock Life Insurance Company (U.S.A.), John Hancock
Investment Management Services, LLC, John Hancock Funds, LLC, and
John Hancock Distributors, LLC,

### NOTICE OF APPEAL TO
### THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Notice is hereby given that Danielle Santomenno, Karen Poley and Barbara Poley, hereby appeal to the United States Court of Appeals for the Third Circuit from the July 24, 2013 Order dismissing all of Plaintiffs' claims in their entirety.

Respectfully submitted,

By:   s/Arnold Lakind
      SZAFERMAN, LAKIND,
       BLUMSTEIN, & BLADER, P.C.
      101 Grovers Mill Road, Suite 200
      Lawrenceville, NJ 08648
      Phone: (609) 275-4511
      Fax:  (609) 275-4511
      *Counsel for Plaintiff-Appellants*

Dated: August 9, 2013

**Ja-2**

**CERTIFICATE OF SERVICE**

This is to certify that the within Notice of Appeal was filed with the Clerk of the United States District Court for the District of New Jersey using the CM/ECF system, which will automatically provide notice to the following attorneys of record by electronic means:

> Brian J. McMahon
> GIBBONS, P.C.
> One Gateway Center
> Newark, NJ 07102
>
> J. Brugh Lower
> GIBBONS, P.C.
> One Gateway Center
> Newark, NJ 07102

This 9th day of August, 2013

> By:  s/Arnold Lakind
>
> SZAFERMAN, LAKIND,
>   BLUMSTEIN, & BLADER, P.C.
> 101 Grovers Mill Road, Suite 200
> Lawrenceville, NJ 08648
> Phone: (609) 275-4511
> Fax:  (609) 275-4511
> *Counsel for Plaintiff-Appellants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANIELLE SANTOMENNO, *et al.*, | Civ. No. 2:10-cv-01655 (WJM) |
| Plaintiffs, | |
| v. | ORDER |
| JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), *et al.*, | |
| Defendants. | |

**THIS MATTER** comes before the Court on Defendants' motion to dismiss; for the reasons set forth in the accompanying opinion; and for good cause appearing;

**IT IS** on this 24th day of July 2013, hereby,

**ORDERED** that Defendants' motion to dismiss is **GRANTED**; and it is further

**ORDERED** that the Second Amended Complaint is **DISMISSED WITH PREJUDICE**.

            /s/ William J. Martini
            **WILLIAM J. MARTINI, U.S.D.J.**

# Ja-4

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DANIELLE SANTOMENNO,** *et al.,* | Civ. No. 2:10-cv-01655 (WJM) |
| **Plaintiffs,** | |
| **v.** | **OPINION** |
| **JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),** *et al.,* | |
| **Defendants.** | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Danielle Santomenno, Karen Poley, and Barbara Poley bring this action individually and on behalf of a putative class of plan participants against John Hancock Life Insurance Company (U.S.A.) and its affiliates (collectively, "John Hancock" or "Defendants"), under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, for allegedly charging their retirement plans excessive fees. This matter comes before the Court on Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

## I.    BACKGROUND

### A.  Facts

Plaintiff Santomenno was an employee of J & H Berge, Inc. Plaintiffs K. Poley, and B. Poley were employees of Scibal Associates, Inc. These employers sponsored various benefit plans for their employees, including 401(k) retirement plans. The 401(k) retirement plans (the "Plans") were administered by trustees (the "Trustees"). The Trustees of the Plans entered into agreements with John Hancock, a service provider for 401(k) retirement plans.

John Hancock provided each Plan with a product known as a group annuity contract. As part of its services, John Hancock provided Trustees with a menu of 401(k)

1

investment options (the "big menu"). The options on the big menu included John Hancock mutual funds ("John Hancock Funds") and mutual funds offered by other companies ("Independent Funds"). The Trustees selected a subset of the options on the big menu to be included in their Plans (the "small menu"). *See* Second Amended Complaint ("SAC") ¶ 18, ECF No. 34 ("Each of the [plans], or their sponsors, selects all or some of the funds on the menu constructed by [JHUSA] to be made available to [participants]"). Employees could then pick from the options on the small menu when deciding where to invest their 401(k) contributions. Plaintiffs take issue with John Hancock's performance as a service provider in three respects.

First, Plaintiffs allege that John Hancock's service provider fees were excessive. Every mutual fund has fees. The total amount of fees for a given mutual fund is referred to as that mutual fund's "Expense Ratio." SAC ¶ 250. The Expense Ratios for the John Hancock Funds and the Independent Funds encompassed a number of different fees, including a Sales and Service Fee, a 12b-1 Fee, and an Investment Advisor Fee. The Sales and Service Fee represented compensation paid to each Plan's financial representative. The 12b-1 Fee was a marketing and distribution fee. And the Investment Advisor Fee represented compensation paid to subadvisors and others who took care of the administrative aspects of managing the investment. Plaintiffs argue that these fees were excessive in light of the services performed.

Plaintiffs do not dispute that all of these fees were fully disclosed to the Trustees and plan participants. *See* SAC ¶¶ 146-47, 150, 158, 203-04, 207, 212. In fact, the Trustees and plan participants received a booklet entitled "Your Investment Options," that described each fee in detail. *See* SAC ¶¶ 146-50; Your Investment Options booklet, Certification of Alison V. Douglass ("Douglass Cert.") Ex. E at 3-4, 38, ECF No. 71-7.[1] The booklet also provided fee information for each individual investment option, including the Expense Ratio for that option and the fees that made up the Expense Ratio. *See* Douglass Cert. Ex. E at 9-39.

Second, Plaintiffs allege that John Hancock improperly received revenue sharing payments in connection with the Plans. Participant retirement contributions are not invested into mutual funds directly. State insurance law and ERISA require service providers to keep retirement contributions separate from other assets. In addition, if every individual participant in a plan were to invest directly in a mutual fund, the mutual funds would have to keep track of and service thousands of individual accounts, many of which contained little money. Instead, John Hancock, like other service providers, creates a separate account corresponding with each mutual fund, and then pools

---

[1] The Your Investment Options booklet was explicitly relied on in the Second Amended Complaint. *See* SAC ¶¶ 146-47, 150. Accordingly, the Court may consider it on a motion to dismiss. *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered").

2

**Ja-6**

individual contributions for the mutual fund in that separate account. John Hancock then uses the separate account as a whole to invest in the designated mutual fund.

From the perspective of a plan participant, this is the same as investing in the mutual fund directly. From the perspective of a mutual fund, this makes a big difference because the mutual fund only has to keep track of one large investor instead of thousands of small investors. Because John Hancock is the one administering thousands of individual accounts, the mutual fund's administrative, marketing, and service costs are much lower. As a result, the Independent Funds are willing to pay some of their fees to John Hancock as compensation for performing these services. This practice is known as "revenue sharing." *See* SAC at 152; *see also Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 909 (7th Cir. 2013). Revenue sharing does not alter a mutual fund's Expense Ratio or the fees that make up that Expense Ratio. Rather, it impacts what the service provider and the mutual fund do with the fees after those fees have been paid. Plaintiffs allege that John Hancock's receipt of revenue sharing payments was improper, and that instead, John Hancock should have used that revenue to provide a discount to plan participants. SAC at 154.

Third, Plaintiffs allege that John Hancock improperly selected the JHT-Money Market Trust to be included in their big menu of investment options. Plaintiffs argue that this option should not have been included because the advisor to the JHT-Money Market Trust had previously been cited and fined by the Securities and Exchange Commission. SAC at 156.

### B. Procedural History

Plaintiffs filed this action on March 31, 2010. On October 22, 2010, Plaintiffs filed the Second Amended Complaint, asserting seven ERISA claims and two Investment Company Act of 1940 ("ICA") claims. Defendants moved to dismiss. On May 23, 2011, this Court entered an Opinion and Order dismissing all nine counts of the Second Amended Complaint. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, No. 2:10-cv-01655, 2011 WL 2038769 (D.N.J. May 23, 2011). Plaintiffs appealed. On April 16, 2012, the Third Circuit affirmed the dismissal of the ICA claims, but reversed and remanded on the ERISA claims. *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178 (3d Cir. 2012). Defendants now move to dismiss the ERISA claims on alternate grounds.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in

3

**Ja-7**

the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

## III.    DISCUSSION

In the Second Amended Complaint, Plaintiffs assert breach of fiduciary duty claims under ERISA § 404(a) in connection with the following practices:

      (1) Count 1:  Charging Excessive Sales and Service Fees for John Hancock Funds;
      (2) Count 2:  Charging Excessive Sales and Service Fees for Independent Funds;
      (3) Count 3:  Charging 12b-1 Fees for John Hancock Funds;
      (4) Count 4:  Charging 12b-1 Fees for Independent Funds;
      (5) Count 5:  Charging Excessive Investment Advisor Fees;
      (6) Count 6:  Receiving Revenue-Sharing Payments; and
      (7) Count 7:  Selecting the JHT-Money Market Trust as an Investment Option.

In Counts 1, 2, 3, 5, and 6, Plaintiffs also assert prohibited transaction claims under ERISA § 406.

Defendants move to dismiss on nine grounds, arguing that:  (1) Plaintiffs failed to exhaust their administrative remedies; (2) Plaintiffs' claims are time-barred; (3) Plaintiffs lack standing to sue for certain investment options; (4) the John Hancock affiliates should be dismissed; (5) Counts 3, 4, 5, and 6 duplicate the dismissed ICA claims; (6) Counts 1, 2, and 7 are not plausible claims; (7) Plaintiffs failed to plead loss causation; (8) Plaintiffs failed to plead their prohibited transaction claims; and (9) John Hancock is not an ERISA fiduciary.

The Court finds that John Hancock is not an ERISA fiduciary for the purpose of any of the claims asserted in this case. Because this requires a complete dismissal of all

of Plaintiff's claims, the Court does not reach the parties' other arguments.[2] The Court will address (1) the law governing ERISA fiduciary status, generally; (2) the law governing ERISA fiduciary status in 401(k) fee cases; and (3) why John Hancock is not an ERISA fiduciary in this case.

### A. ERISA Fiduciary Status, Generally

ERISA requires each plan to have one or more named fiduciaries that are granted the authority to manage the operation and administration of the plan.[3] 29 U.S.C. § 1102(a)(1). In addition, an entity that is not a named fiduciary may be considered an ERISA fiduciary in certain circumstances. ERISA provides that:

> a person is a fiduciary with respect to a plan *to the extent*
>
> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets,
>
> (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
>
> (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (emphasis added).

Because an entity is only a fiduciary "to the extent" that it possesses authority or control over the plan, *id.*, "fiduciary status is not an all or nothing concept." *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995) (quotations omitted). Instead, courts "must ask whether [the entity] is a fiduciary with respect to the particular activity in question." *Srein v. Frankford Trust Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (quotations omitted). "In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether [the entity] was acting as a fiduciary . . . when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

---

[2] In their renewed motion to dismiss, Defendants raise arguments that they raised in their first motion, and also raise new arguments that they never asserted before. Plaintiffs argue that Defendants are barred from raising new arguments by Federal Rule of Civil Procedure 12(g)(2) ("a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion"). Because Defendants previously argued that John Hancock is not an ERISA fiduciary, and the Court decides the motion on that ground, it is unnecessary to decide the Rule 12(g)(2) issue.

[3] In this case, the Trustees are the named fiduciaries.

Both breach of fiduciary duty claims and prohibited transaction claims require that an action be taken by an ERISA fiduciary. ERISA § 404, which governs breach of fiduciary duty claims, prohibits plan fiduciaries from discharging their duties in a manner that is not "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). ERISA § 406, which governs prohibited transaction claims, "prohibits plan fiduciaries from entering into certain transactions." *Nat'l Sec. Sys., Inc. v. Iola ("Iola")*, 700 F.3d 65, 82 (3d Cir. 2012); 29 U.S.C. § 1106 ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction" that fulfills certain prohibited criteria); *Danza v. Fid. Mgmt. Trust Co.*, No. 11-2893, 2012 WL 3599362, at *3 (D.N.J. Aug. 20, 2012) ("Plaintiffs cannot maintain claims for prohibited transactions because Defendants were not fiduciaries"). Thus, ERISA fiduciary status is an essential element of all of Plaintiffs' claims.

Citing the Third Circuit's opinion in *Iola*, Plaintiffs assert that "fiduciary status is irrelevant" to their prohibited transaction claims. Pls.' Ltr. at 2, ECF No. 81. This is an incorrect reading of *Iola*. The parties in *Iola* agreed that a named fiduciary, Tri-Core, engaged in prohibited transactions. *Iola*, 700 F.3d at 90 ("the parties agree, Tri-Core (as fiduciary) contravened § 406(b)(3).") The "narrow legal question" before the Third Circuit was whether the plaintiffs could obtain equitable relief from an advisor who knowingly participated in those prohibited transactions, even though the advisor was not a fiduciary. *Id.* at 91. The Third Circuit said yes. *Id.* The Third Circuit held that, if a fiduciary is liable for engaging in prohibited transactions, then a nonfiduciary may also be liable for participating in the same transactions. *Id.* The Third Circuit did not hold that the plaintiffs could recover, even if nobody was a fiduciary. Such a holding would contradict the plain language of the statute, which provides that a "fiduciary" shall not engage in a prohibited transaction. 29 U.S.C. § 1106. In this case, Plaintiffs make no attempt to show that some other fiduciary engaged in a prohibited transaction. As such, Plaintiffs' prohibited transaction claims will fail unless they show that at least one John Hancock entity was an ERISA fiduciary.

## B. ERISA Fiduciary Status in 401(k) Fee Cases

Litigation over the fees charged to 401(k) retirement plans began to emerge in approximately 2006. Robert N. Eccles, *Circuits Return to 401(k) Fee Cases*, 19 No. 4 ERISA Litig. Rep. (Newsl.) 4 (2011). Circuit court case law governing the fiduciary status of service providers in 401(k) fee cases has just begun to develop, but the recent cases are instructive. *See id.* Three cases, in particular, are applicable here.

In *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), employees of Deere & Company ("Deere") sued the Fidelity Management Trust Company ("Fidelity"), the service provider for their 401(k) plan. *Id.* at 578. The plaintiffs argued that Fidelity was liable as an ERISA fiduciary because Fidelity (1) selected 401(k) investment options with excessive fees, and (2) received revenue sharing payments in connection with the plan. *Id.* at 583. The Seventh Circuit disagreed for two reasons. *Id.* at 583-84. First, the court

6

held that Fidelity was not a fiduciary for purposes of its fees because it negotiated those fees at arms-length. *Id.* at 583 ("a service provider does not act as a fiduciary with respect to the terms in the service agreement if it does not control the named fiduciary's negotiation and approval of those terms"). Second, the court held that Fidelity was not a fiduciary for purposes of selecting investment options because it was "Deere, not Fidelity [that had] the final say on which investment options [would] be included" in the plan. *Id.* Accordingly, the Seventh Circuit concluded that the action against Fidelity was properly dismissed. *Id.* at 592.

In *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir. 2011), employees of the Unisys Corporation ("Unisys") sued Fidelity. The plaintiffs argued that Fidelity was liable as an ERISA fiduciary because Fidelity selected 401(k) investment options with excessive fees. *Id.* at 319. Relying on *Hecker*, the Third Circuit held that Fidelity was not an ERISA fiduciary for two reasons. *Id.* at 324. First, the court held that "Fidelity owes no fiduciary duty with respect to the negotiation of its fee compensation by Unisys." *Id.* The court reasoned that, "'[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with that plan, he . . . is unable to exercise any control over the trustees' decision [on] whether or not, and on what terms, to enter into an agreement with him.'" *Id.* (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)). Second, the court held that Fidelity was not a fiduciary for purposes of selecting investment options because the trustees had the final say on which investment options would be included in the plan. *Id.* at 323. Accordingly, the Third Circuit concluded that the action against Fidelity was properly dismissed. *Id.* at 329.[4]

In *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905 (7th Cir. 2013), the most recent case in the *Hecker* and *Renfro* line of cases, the Seventh Circuit again found that a 401(k) service provider was not a fiduciary. *Id.* at 908. In *Leimkuehler*, a plan trustee sued service provider American United Life Insurance Co. ("AUL"), arguing that AUL breached its fiduciary duty by receiving revenue-sharing payments. *Id.* The plaintiff argued that AUL was a fiduciary because (1) AUL selected investment options for the plan, (2) AUL maintained plan assets in a separate account, and (3) AUL had the unilateral right to substitute or delete the funds available to the plan. *Id.* at 910-11. The Seventh Circuit rejected all three arguments. First, the court reiterated that the act of selecting investment options does not give rise to fiduciary status. *Leimkuehler*, 713 F.3d at 911. The court explained that "AUL [discloses] the bottomline cost of every fund that it offers, [so] Leimkuehler was free to seek a better deal with a different 401(k) service provider if he felt that AUL's investment options were too expensive." *Id.* at 912. Second, the court found that AUL's management of a separate account did not give rise to fiduciary status because that task had nothing to do with an alleged breach of fiduciary duty. *Id.* at 913-14. For example, "Leimkuehler [did] not allege that AUL . . . [withdrew] funds in the separate account to pay for a company-wide vacation to Las

---

[4] The Third Circuit issued its decision in *Renfro* several months after this Court issued its Opinion on the first motion to dismiss.

Vegas." *Id.* at 913. Third, the court found that AUL's right to substitute and delete funds also had nothing to do with an alleged breach of fiduciary duty. *Id.* at 914. Accordingly, the Seventh Circuit concluded that AUL was properly dismissed on summary judgment. *Id.* at 908.

### C. John Hancock is Not a Fiduciary

In every case charging breach of ERISA fiduciary duty, the threshold question is whether the entity was "acting as a fiduciary . . . when taking the action subject to complaint." *Pegram*, 530 U.S. at 226. In this case, there are three actions subject to complaint. In Counts 1 through 5, Plaintiffs allege that John Hancock charged excessive fees. In Count 6, Plaintiffs allege that John Hancock improperly received revenue-sharing payments. And in Count 7, Plaintiffs allege that John Hancock improperly selected the JHT-Money Market Trust as an investment option. The Court will address each action in turn.

First, the Court finds that John Hancock is not a fiduciary with respect to its fees (Counts 1-5). In *Renfro*, the Third Circuit made clear that a service provider "owes no fiduciary duty with respect to the negotiation of its fee compensation." *Renfro*, 671 F.3d at 324; *see also Hecker*, 556 F.3d at 583. In this case, John Hancock negotiated its service provider fees at arm's length. Those fees were fully disclosed. *See* SAC ¶¶ 146-50; Douglass Cert. Ex. E. And the Trustees were "free to seek a better deal with a different 401(k) service provider if [they] felt that [the] investment options were too expensive." *Leimkuehler*, 713 F.3d at 912. Accordingly, John Hancock owed no duty to Plaintiffs with respect to its fees. *See Danza v. Fid. Mgmt. Trust Co.*, No. 11-2893, 2012 WL 3599362, at *3 (D.N.J. Aug. 20, 2012) ("Defendants owed no duty to Plaintiffs regarding the reasonableness of the QDRO service fees").

Second, the Court finds that John Hancock is not a fiduciary with respect to revenue-sharing payments (Count 6). Service providers do not "become fiduciaries merely by receiving shared revenue," especially when "the total expense of the investment was accurately disclosed" to plan participants. *Leimkuehler v. Am. United Life Ins. Co.*, No. 10-333, 2012 WL 28608, at *14 (S.D. Ind. Jan. 5, 2012) *aff'd*, 713 F.3d 905 (7th Cir. 2013); *see also Hecker*, 556 F.3d at 584 (no fiduciary status arises from revenue sharing arrangements). Again, John Hancock's fees, and the total expenses associated with each investment option, were fully disclosed to the Trustees and plan participants. The Trustees and plan participants chose to invest in those options in spite of the fees. The fact that John Hancock and the mutual funds chose to allocate those fees in a particular way after the fees were paid does not make John Hancock a fiduciary. *See Leimkuehler*, 713 F.3d at 908.

Third, the Court finds that John Hancock is not a fiduciary with respect to the selection of the JHT-Money Market Trust as an investment option (Count 7). A company like John Hancock "is free to design the various plan templates and investment menus to

offer to prospective clients, who can then decide to contract with [it] or not." *Zang v. Paychex, Inc.*, 728 F. Supp. 2d 261, 272 (W.D.N.Y. 2010). A provider does not incur fiduciary status simply because it offers a "big menu" of investment options from which a trustee selects a "small menu" for her plan. *F.W. Webb Co. v. State St. Bank & Trust Co.*, No. 09-1241, 2010 WL 3219284, at *5-7 (S.D.N.Y. Aug. 12, 2010); *Renfro*, 671 F.3d at 323; *Hecker*, 556 F.3d at 592. That is precisely the situation in this case: John Hancock offered a big menu of investment options from which the Trustees selected small menus for their Plans. *See* SAC ¶ 18. And, just like in *Hecker* and *Renfro*, it was the Trustees, not John Hancock, who had the final say on which investment options to include in the Plans. Because John Hancock did not have ultimate authority over which investments were included in the Plans, John Hancock was not a fiduciary with respect to the selection of the JHT-Money Market Trust. *See Renfro*, 671 F.3d at 323.

Plaintiffs nevertheless argue that John Hancock was a fiduciary because it maintained Plan assets in a separate account, reserved the right to substitute or delete the funds available to the plan, and provided investment advice. The Court disagrees, as none of these tasks relate to any alleged breach of fiduciary duty. Plaintiffs do not allege, for example, that John Hancock mismanaged the Plan's separate account by withdrawing funds to pay for a company-wide trip to Las Vegas. *See Leimkuehler*, 713 F.3d at 913. Similarly, Plaintiffs do not allege that John Hancock selected investment options with reasonable fees, and then unilaterally substituted funds with high fees. *See id.* at 914 (AUL's unilateral right to substitute and delete funds did not give rise to fiduciary status). Finally, Plaintiffs do not allege that John Hancock gave bad investment advice by, say, providing inaccurate updates on the plan participants' investments.

Plaintiffs' other arguments are similarly unpersuasive. Plaintiffs argue that John Hancock is a fiduciary because the company offers a Fiduciary Standards Warranty. However, the allegations in the Second Amended Complaint make clear that this product is designed to help *employers* (*i.e.*, named fiduciaries) meet their fiduciary obligations. *See* SAC ¶¶ 120, 170 (Fiduciary Standards Warranty is designed to "help[] employers meet the highest fiduciary standards for selection and monitoring of the investments they offer their 401(k) participants"). It in no way warrants that ***John Hancock*** is an ERISA fiduciary. Plaintiffs also argue that the Court should follow *Charters v. John Hancock Life Ins. Co.*, 583 F. Supp. 2d 189 (D. Mass. 2008) and *Santomenno v. Transamerica Life Ins. Co.*, No. 12-02782, 2013 WL 603901 (C.D. Cal. Feb. 19, 2013), two cases in which district courts were presented with nearly identical facts and found that a service provider was an ERISA fiduciary. The Court notes that many of these 401(k) fee cases have extremely similar facts, and that different district courts may come to different conclusions when presented with the same issues. However, courts in this District have the benefit of a Third Circuit opinion that squarely addresses the fiduciary status of a service provider in a 401(k) fee case. *See Renfro*, 671 F.3d at 324. Accordingly, the

**Ja-13**

Court will follow the Third Circuit, rather than relying on the out-of-circuit district court decisions offered by Plaintiffs.[5]

In conclusion, the Court finds that John Hancock was not acting as a fiduciary when taking any of the actions subject to complaint. Because fiduciary status is an essential element of all of Plaintiffs' claims, the Court finds that the Second Amended Complaint should be dismissed.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**, and the Second Amended Complaint is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.

_/s/ William J. Martini_
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 24, 2013**

---

[5] In a single sentence of their Opposition Brief, Plaintiffs argue that John Hancock is estopped from contesting its fiduciary status because it lost that issue when it was a Defendant in the *Charters* case.  Opp. Br. at 28.  Plaintiffs bear the burden of showing that collateral estoppel applies.  *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000).  Because Plaintiffs made no attempt to meet that burden, the Court finds this argument unavailing.

**Ja-14**

**2:10-cv-01655-WJM-MF** SANTOMENNO v. JOHN HANCOCK LIFE INSURANCE COMPANY
(U.S.A.)
William J. Martini, presiding
Mark Falk, referral
Date filed: 03/31/2010
Date terminated: 07/24/2013
Date of last filing: 08/14/2013

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| 1 | *Filed:* *Entered:* | 03/31/2010 04/06/2010 | ❸ Complaint |
| 2 | *Filed & Entered:* | 04/06/2010 | ❸ Summons Issued |
| 3 | *Filed & Entered:* | 04/21/2010 | ❸ Notice of Appearance |
| 4 | *Filed & Entered:* | 04/23/2010 | ❸ Amended Complaint |
| 5 | *Filed:* *Entered:* | 05/11/2010 05/12/2010 | ❸ Letter |
| 6 | *Filed & Entered:* | 05/21/2010 | ❸ Corporate Disclosure Statement |
| 7 | *Filed & Entered:* | 05/21/2010 | ❸ Corporate Disclosure Statement |
| 8 | *Filed & Entered:* | 05/21/2010 | ❸ Corporate Disclosure Statement |
| 9 | *Filed & Entered:* | 05/21/2010 | ❸ Corporate Disclosure Statement |
| 10 | *Filed & Entered:* | 05/21/2010 | ❸ Corporate Disclosure Statement |
| 11 | *Filed & Entered:* | 05/24/2010 | ❸ Letter |
| 12 | *Filed & Entered:* | 05/24/2010 | ❸ Notice of Appearance |
| 13 | *Filed:* *Entered:* | 05/24/2010 05/25/2010 | ❸ Stipulation and Order |
| 14 | *Filed & Entered:* | 06/09/2010 | ❸ Notice of Appearance |
| 15 | *Filed:* *Entered:* | 06/09/2010 06/11/2010 | ❸ Order |
| 16 | *Filed:* *Entered:* | 06/09/2010 06/11/2010 | ❸ Order |
| 17 | *Filed & Entered:* | 06/14/2010 | ❸ Notice of Pro Hac Vice to Receive NEF |
| 18 | *Filed & Entered:* | 06/14/2010 | ❸ Notice of Pro Hac Vice to Receive NEF |
| 19 | *Filed & Entered:* | 06/23/2010 | ❸ Notice of Appearance |
| 20 | *Filed & Entered:* | 06/23/2010 | ❸ Notice of Appearance |
| 21 | *Filed & Entered:* *Terminated:* | 07/09/2010 07/12/2010 | ❸ Motion for Leave to File Excess Pages |
| | *Filed & Entered:* | 07/10/2010 | ❸ Set/Reset Motion and R&R Deadlines/Hearings |
| 22 | *Filed & Entered:* | 07/12/2010 | ❸ Order on Motion for Leave to File Excess Pages |

| | | | |
|---|---|---|---|
| 23 | *Filed & Entered:*<br>*Terminated:* | 07/16/2010<br>10/28/2010 | Motion to Dismiss |
| | *Filed & Entered:* | 07/17/2010 | Set/Reset Motion and R&R Deadlines/Hearings |
| | *Filed & Entered:* | 07/19/2010 | Docket Annotation |
| 24 | *Filed & Entered:* | 09/22/2010 | Brief in Opposition to Motion |
| 25 | *Filed & Entered:* | 09/27/2010 | Letter |
| 26 | *Filed & Entered:*<br>*Terminated:* | 09/29/2010<br>10/01/2010 | Motion to Seal Document |
| | *Filed & Entered:* | 09/30/2010 | Set/Reset Motion and R&R Deadlines/Hearings |
| 27 | *Filed:*<br>*Entered:* | 10/01/2010<br>10/02/2010 | Order on Motion to Seal Document |
| 28 | *Filed & Entered:* | 10/05/2010 | Letter |
| | *Filed & Entered:* | 10/19/2010 | Set/Reset Motion and R&R Deadlines/Hearings |
| | *Filed:*<br>*Entered:* | 10/19/2010<br>10/22/2010 | Status Conference |
| 29 | *Filed & Entered:*<br>*Terminated:* | 10/19/2010<br>10/22/2010 | Motion to Amend/Correct |
| 30 | *Filed:*<br>*Entered:* | 10/19/2010<br>10/21/2010 | Order on Oral Motion |
| 31 | *Filed & Entered:* | 10/22/2010 | Order on Motion to Amend/Correct |
| 32 | *Filed & Entered:* | 10/22/2010 | Statement |
| 33 | *Filed & Entered:* | 10/22/2010 | Amended Complaint |
| 34 | *Filed & Entered:* | 10/22/2010 | Amended Complaint |
| 35 | *Filed & Entered:* | 10/22/2010 | Stipulation |
| | *Filed & Entered:* | 10/29/2010 | Notice (Other) |
| 36 | *Filed & Entered:* | 11/03/2010 | Letter |
| 37 | *Filed & Entered:* | 11/04/2010 | Letter |
| 38 | *Filed:*<br>*Entered:* | 11/09/2010<br>11/10/2010 | Status Conference |
| 39 | *Filed & Entered:* | 11/10/2010 | Stipulation |
| 42 | *Filed:*<br>*Entered:* | 11/14/2010<br>11/17/2010 | Order on Oral Motion |
| 40 | *Filed & Entered:* | 11/15/2010 | Order |
| 41 | *Filed & Entered:* | 11/16/2010 | Letter |
| | *Filed:*<br>*Entered:* | 11/18/2010<br>11/23/2010 | Status Conference |
| 43 | *Filed:*<br>*Entered:* | 11/30/2010<br>12/01/2010 | Stipulation and Order |
| 44 | *Filed & Entered:* | 12/08/2010 | Letter |
| | *Filed:*<br>*Entered:* | 12/09/2010<br>12/10/2010 | Status Conference |

**JA-16**

| | | | |
|---|---|---|---|
| <u>45</u> | *Filed:* | 12/10/2010 | Order on Oral Motion |
| | *Entered:* | 12/13/2010 | |
| <u>46</u> | *Filed & Entered:* | 12/21/2010 | Motion to Dismiss |
| | *Terminated:* | 05/23/2011 | |
| | *Filed & Entered:* | 12/22/2010 | Set/Reset Motion and R&R Deadlines/Hearings |
| <u>47</u> | *Filed & Entered:* | 01/21/2011 | Brief in Opposition to Motion |
| <u>48</u> | *Filed & Entered:* | 01/31/2011 | Notice of Appearance |
| <u>49</u> | *Filed & Entered:* | 01/31/2011 | Notice to Withdraw from NEF as to Case |
| <u>50</u> | *Filed & Entered:* | 02/02/2011 | Notice (Other) |
| <u>51</u> | *Filed & Entered:* | 02/02/2011 | Notice to Withdraw from NEF as to Case |
| <u>52</u> | *Filed & Entered:* | 02/04/2011 | Reply Brief to Opposition to Motion |
| <u>53</u> | *Filed & Entered:* | 03/08/2011 | Notice of Appearance |
| <u>54</u> | *Filed & Entered:* | 05/23/2011 | Opinion |
| <u>55</u> | *Filed & Entered:* | 05/23/2011 | Order on Motion to Dismiss |
| <u>56</u> | *Filed & Entered:* | 06/03/2011 | Notice of Appeal (USCA) |
| | *Terminated:* | 05/23/2012 | |
| <u>57</u> | *Filed & Entered:* | 06/06/2011 | Letter |
| <u>58</u> | *Filed & Entered:* | 06/08/2011 | USCA Case Number |
| | *Terminated:* | 05/23/2012 | |
| <u>59</u> | *Filed & Entered:* | 06/17/2011 | Appeal Transcript Request |
| | *Terminated:* | 05/23/2012 | |
| | *Filed:* | 05/23/2012 | Mandate Notice |
| | *Entered:* | 06/06/2012 | |
| <u>60</u> | *Filed & Entered:* | 05/23/2012 | USCA Mandate |
| <u>61</u> | *Filed & Entered:* | 06/13/2012 | Letter |
| <u>62</u> | *Filed & Entered:* | 06/15/2012 | Order Reopening Case |
| 63 | *Filed & Entered:* | 06/25/2012 | Order |
| | *Filed & Entered:* | 06/27/2012 | Status Conference |
| <u>64</u> | *Filed & Entered:* | 06/27/2012 | Notice of Appearance |
| <u>65</u> | *Filed:* | 07/11/2012 | Order |
| | *Entered:* | 07/12/2012 | |
| | *Filed & Entered:* | 07/12/2012 | Update Answer Due Deadline |
| <u>66</u> | *Filed & Entered:* | 07/31/2012 | Letter |
| <u>67</u> | *Filed & Entered:* | 08/03/2012 | Letter |
| | *Filed & Entered:* | 08/07/2012 | Update Answer Due Deadline |
| <u>68</u> | *Filed & Entered:* | 08/07/2012 | Order |
| <u>69</u> | *Filed & Entered:* | 08/22/2012 | Letter |
| <u>70</u> | *Filed:* | 09/05/2012 | Stipulation and Order |
| | *Entered:* | 09/06/2012 | |
| | *Filed & Entered:* | 09/06/2012 | Update Answer Due Deadline |

| 71 | Filed & Entered: 12/14/2012 | Motion to Dismiss |
|----|-----------------------------|-------------------|
|    | Terminated:       07/24/2013 |                   |
|    | Filed & Entered: 12/16/2012 | Set/Reset Motion and R&R Deadlines/Hearings |
|    | Filed & Entered: 12/19/2012 | Set/Reset Motion and R&R Deadlines/Hearings |
| 72 | Filed & Entered: 01/25/2013 | Brief in Opposition to Motion |
| 73 | Filed & Entered: 02/15/2013 | Reply Brief to Opposition to Motion |
| 74 | Filed & Entered: 02/25/2013 | Letter |
| 75 | Filed & Entered: 03/01/2013 | Letter |
| 76 | Filed & Entered: 03/07/2013 | Notice of Appearance |
| 77 | Filed & Entered: 03/08/2013 | Letter |
| 78 | Filed & Entered: 03/26/2013 | Letter |
| 79 | Filed & Entered: 04/04/2013 | Letter |
| 80 | Filed & Entered: 04/16/2013 | Letter |
| 81 | Filed & Entered: 04/26/2013 | Letter |
| 82 | Filed & Entered: 05/22/2013 | Letter |
| 83 | Filed & Entered: 05/28/2013 | Letter |
|    | Filed & Entered: 07/24/2013 | Terminated Case |
| 84 | Filed & Entered: 07/24/2013 | Opinion |
| 85 | Filed & Entered: 07/24/2013 | Order on Motion to Dismiss |
| 86 | Filed & Entered: 08/09/2013 | Notice of Appeal (USCA) |
| 87 | Filed & Entered: 08/14/2013 | USCA Case Number |

| PACER Service Center | | |
|----------------------|---|---|
| **Transaction Receipt** | | |
| 01/07/2014 14:37:50 | | |
| **PACER Login:** | sl0198 | **Client Code:** | 65580-6/jwk |
| **Description:** | History/Documents | **Search Criteria:** | 2:10-cv-01655-WJM-MF |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |