No. 13-3467

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

DANIELLE SANTOMENNO, et al.,
Plaintiffs-Appellants

v.

JOHN HANCOCK LIFE INSURANCE COMPANY, et al.,
Defendants-Appellees
_____

On Appeal from the United States District Court
for the District of New Jersey
_____

Brief of the Secretary of Labor, Thomas E. Perez, as Amicus Curiae
in Support of Plaintiffs-Appellants and Requesting Reversal
_____

M. PATRICIA SMITH
Solicitor of Labor

G. WILLIAM SCOTT
Acting Associate Solicitor
Plan Benefits Security Division

NATHANIEL I. SPILLER
Counsel for Appellate and Special Litigation

RADHA VISHNUVAJJALA
Trial Attorney
U.S. Department of Labor
200 Constitution Ave., N.W., N-4611
Washington, D.C. 20210
(202) 693-5790

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................. ii

STATEMENT OF THE ISSUES ...................................................................... 1

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE ...... 1

STATEMENT OF THE CASE ........................................................................... 2

   1.  Statement of facts. .................................................................................. 2

   2.  District court decision. ........................................................................... 8

SUMMARY OF THE ARGUMENT ............................................................... 10

ARGUMENT ..................................................................................................... 12

  I.   The district court erred in dismissing the claim that John Hancock
      acted as an ERISA fiduciary when it retained authority to
      unilaterally substitute and delete mutual funds from the Plans'
      previously selected investment options and to change the share
      classes in which participants' funds were invested, and did so in
      some instances ..................................................................................... 13

  II.  The district court erred in dismissing the claim alleging that John
      Hancock acted as an ERISA fiduciary when it set its own fees paid
      from Plan assets ................................................................................... 23

CONCLUSION .... .......................................................................................... 27

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
CERTIFICATE OF VIRUS CHECK
CERTIFICATION OF BAR MEMBERSHIP
CERTIFICATE OF SERVICE AND ECF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases:** **Page**

Adams v. Freedom Forge Corp.,
   204 F.3d 475 (3d Cir. 2000) ...................................................................... 19

Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona),
   125 F.3d 715 (9th Cir. 1997) ...................................................................... 12

Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare
   Fund v. Wettlin Assocs, Inc.,
   237 F.3d 270 (3d Cir. 2001) ....................................................2 n.1 & passim

Bd. of Trs. of W. Lake Superior Piping Indus. Pension Fund v. Am.
   Benefit Plan Adm'rs, Inc.,
   925 F. Supp. 1424 (D. Minn. 1996) ............................................................ 18

Chao v. Day,
   436 F.3d 234 (D.C. Cir. 2006) .................................................................... 16

Charters v. John Hancock Life Ins. Co.,
   583 F. Supp. 2d 189 (D. Mass. 2008)..........................................9 & passim

Danza v. Fidelity Mgmt. Trust Co.,
   ___ Fed. Appx. ___, 2013 WL 3872118 (3d Cir. 2013) ............................ 21

David P., Coldesina, D.D.S., P.C. v. Estate of Simper,
   407 F.3d 1126 (10th Cir. 2005) ...................................................... 15, 16, 17

Delaware Nation v. Pennsylvania,
   446 F.3d 410 (3d Cir. 2006) ............................................................ 2 n.1, 13

Edmonson v. Lincoln Nat. Life Ins. Co.,
   725 F.3d 406 (3d Cir. 2013) ...................................................................... 19

F.H. Krear & Co. v. Nineteen Named Trs.,
   810 F.2d 1250 (2d Cir. 1987) .................................................................... 24

**Federal Cases--(continued):**                                    **Page**

Genter v. ACME Scale & Supply Co.,
    776 F.2d 1180 (3d Cir. 1985) .................................................................. 15

Greenblatt v. Prescription Plan Servs. Corp.,
    783 F. Supp. 814 (S.D.N.Y. 1992) ........................................................... 18

Healthcare Strategies v. ING Life Ins. & Annuity Co.,
    --F. Supp. 2d--, 2013 WL 4446919 (D. Conn. 2013).......................... 18, 19

Hecker v. Deere & Co.,
    556 F.3d 575,
    reh'g denied 569 F.3d 708 (7th Cir. 2009) ......................................... 15, 21

Hozier v. Midwest Fasteners, Inc.,
    908 F.2d 1155 (3d Cir. 1990) .................................................................. 18

In re Ikon Office Solutions, Inc. Sec. Litig.,
    86 F. Supp. 2d 481 (E.D. Pa. 2000)......................................................... 13

In re Mushroom Transp. Co., Inc.,
    382 F.3d 325 (3d Cir. 2004) ............................................................... 16, 17

John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank,
    510 U.S. 86 (1993) .................................................................................. 12

Leimkuehler v. American United Life Ins. Co.,
    713 F.3d 905 (7th Cir. 2013) ............................................. 17, 18, 19, 19 n.3

Olson v. E.F. Hutton & Co., Inc.,
    957 F.2d 622 (8th Cir. 1992) ............................................................. 16, 18

Pegram v. Herdrich,
    530 U.S. 211 (2000) ................................................................................ 14

Renfro v. Unisys Corp.,
    671 F.3d 314 (3d Cir. 2011) .............................................................. 20, 21

**Federal Cases--(continued):**                                      **Page**

Santomenno v. John Hancock Life Ins. Co., (Santomenno II)
  2013 WL 3864395 (D. N.J. 2013) cert.denied.,
  133 S.Ct. 529 (2012)....................................................................3 & passim

Santomenno v. Transamerica Life Ins. Co.,
  2013 WL 603901 (C.D. Cal. 2013) ....................................9, 16, 20, 22, 24

Varity Corp. v. Howe,
  516 U.S. 489 (1996) ................................................................................ 19

**Federal Regulations:**

Employee Retirement Income Security Act of 1974 (Title I),
    29 U.S.C. § 1001 et. seq.:

  Section 2, 29 U.S.C. § 1001., ...................................................................... 3

  Section 3(21)(A), 29 U.S.C. § 1002 (21)(A)............................1 & passim

  Section 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) ................. 14, 15, 16, 20

  Section 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii)................. 18, 19, 20

  Section 3(34), 29 U.S.C. § 1002(34) ......................................................... 2

  Section 404(a)(1), 29 U.S.C. § 1104(a)(1) ......................................... 5, 23

  Section 502, 29 U.S.C. § 1132 ................................................................. 1

  Section 504, 29 U.S.C. § 1134 ................................................................. 1

  Section 505, 29 U.S.C. § 1135 ................................................................. 1

**Miscellaneous:**

Fed.R.App.P. 29(a) ....................................................................................... 2

Fed.R.Civ.P. 12(b)(6)............................................................................... 8, 12

**Miscellaneous—(continued):**

DOL Op. 97-16, 1997 WL 277979 (May 22, 1997).................................... 22

STATEMENT OF THE ISSUES

1.      Whether the obligations imposed on fiduciaries of employee benefit plans

under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001

et seq., apply to an insurance company because it retained final authority to

substitute or delete mutual funds from the investment options available to

participants in ERISA-covered pension plans and to change the share classes in

which participants' funds were invested.

2.      Whether ERISA's fiduciary obligations apply to an insurance company

service provider because it had unilateral authority to set its own administrative

fees paid from ERISA-covered plan assets.

STATEMENT OF IDENTITY, INTEREST AND AUTHORITY TO FILE

        The Secretary of Labor has primary enforcement and regulatory authority

for Title I of ERISA, see 29 U.S.C. §§ 1132, 1134, 1135.  ERISA protects plan

participants by imposing stringent standards on the fiduciaries who have the

authority to manage or control plan assets.  ERISA defines "fiduciary" in broad,

functional terms that include plan service providers that exercise "any authority or

control respecting management or disposition of [plan] assets" or have "any

discretionary authority or discretionary responsibility in the administration of such

plan."  Id. § 1001(21)(A).  Despite governing documents that gave the defendant

substantial discretionary authority over plan investments and the amount of fees it

1

was paid by the plans, the district court held that the defendant was not a fiduciary with respect to its ongoing fund or share class selection or its administrative and service fees.  The opinion, if affirmed, would undermine ERISA's protection of plan assets by permitting the exercise of that authority to go unchecked by ERISA's strict fiduciary standards.  The Secretary has a compelling interest in arguing that the district court erred and is, therefore, filing this brief as amicus curiae under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE CASE

1. <u>Statement of facts</u>.[1]  This case was brought by three employee participants, one in the J & H Berge, Inc. 401(k) retirement plan and two in the Scibal Associates, Inc. 401(k) retirement plan (the "Plans"), on behalf of the Plans and similarly situated participants or beneficiaries in these Plans.  Joint Appendix ("JA") 36-37, 128 ¶¶ 51, 52, 445.  The Plans are defined contribution plans under ERISA section 3(34), 29 U.S.C. § 1002(34).  <u>Id.</u> at 28, 40  ¶¶ 2, 70, 71.  The Trustees of the Plans contracted with John Hancock Life Insurance Company (U.S.A.) ("John Hancock") to provide a menu of investment options for the Plans.  The menu offered in Santomenno's Plan contained twenty-nine investment options.

---

[1] This case was dismissed on the pleadings, so for the purpose of this appeal, we are assuming all facts alleged in the complaint are true.  <u>See</u> <u>Delaware Nation v. Pennsylvania</u>, 446 F.3d 410, 415 (3d Cir. 2006); <u>Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc.</u>, 237 F.3d 270, 275 (3d Cir. 2001).

Id. at 29-30 ¶ 11.  The menu John Hancock offered in the Poleys' Plan contained sixty-six investment options.  Id. at 30 ¶ 12.  For both Plans, Hancock selected both Hancock funds and independent funds that paid Hancock revenue-sharing payments.  The Trustees for each plan then selected all or some of the offered funds for inclusion in the Plans, and the participants directed money from their individual retirement accounts to be invested in the funds they chose from the investment options on the Plans' menus.  Id. at 50, 51 ¶¶ 132, 134.  Participant retirement accounts were not invested directly into mutual funds.  Santomenno v. John Hancock Life Ins. Co. (Santomenno II), 2013 WL 3864395, at *2 (D. N.J. 2013); JA 51 ¶ 135.  Instead, John Hancock created a separate sub-account for each mutual fund, pooled all participant accounts for the mutual fund in that sub-account, and invested the separate sub-account in the designated mutual fund.  Santomenno II, 2013 WL 3864395, at *2; JA 51 ¶ 135.

Plaintiffs allege that John Hancock was a fiduciary insofar as it had retained unilateral authority to add and delete fund investment options from the Plans' menus.  JA 52, 54-55 ¶¶ 147, 155-60.  John Hancock also retained and exercised the unilateral authority to change the fund share classes, such as retail or institutional classes.  Each class represents a different expense ratio for the same fund, and thus, the expense to participants of investing in a particular fund varied according to which share class Hancock chose.  Id. at 56-57 ¶¶ 162-66; Table III,

Id. at 192, 193, 196 (showing changes in share classes).  John Hancock monitored

the Plans' investment options on a "daily, monthly, quarterly, and annual basis" and

could and did make changes to the Plans' menus of investment options based on

the results of its ongoing monitoring and evaluation of fund performance.  Id. at

54-56, 61-62 ¶¶ 156, 160-161, 189-91 (describing the "Underlying Fund

Replacement Regimen" and "FundCheck Fund Review and Scorecard" programs).

Allegations in the complaint include specific examples from the "Your Investment

Options" booklets indicating a change in the underlying funds in which a particular

sub-account was invested.  Id. at 54-55 ¶ 157 (e.g., "This sub-account previously

invested in a different underlying portfolio [the then underlying fund]. It began

investing in the current underlying portfolio [American Century Vista Fund]

effective on or about May 7, 2005.").  See also id. at 55 ¶ 158 (deletion of the John

Hancock Classic Value Fund and replacement with the T. Rowe Price Equity

Income Fund); id. at 56 ¶ 163 (share class changes).  Thus, plaintiffs allege that

Hancock actually exercised the authority to take the portions of the participants'

accounts that were invested in a fund and invest them in new fund without the

approval of another plan fiduciary or the participants.

     In addition to the fund monitoring and evaluation, John Hancock gave a

"Fiduciary Standards Warranty" to plan sponsors and fiduciaries who met certain

requirements, including the plans at issue in this case.  JA 47, 48 ¶¶ 116, 119; see

4

id. at 44 ¶ 173.  If a plan followed its guidelines for choosing mutual fund

allocations, John Hancock guaranteed that it would pay litigation costs and resolve

any losses to the plan related to its investment process.  Id. at 47, 48 ¶¶ 117, 119,

120.  In advertising the Fiduciary Standards Warranty, John Hancock

"recognize[d] that fund selection and monitoring is an important part of the due

diligence process" and stated that it was "confident that [its] investment selection

and monitoring process meets the highest fiduciary standards."  Id. at 48 ¶ 120.

John Hancock promised that it applied "the same standards that ERISA imposes on

fiduciaries for satisfying their investment duties under ERISA's prudent man rule"

when it selected, monitored, and deleted funds.  Id. at 61 ¶ 188.

Plaintiffs allege that because John Hancock was a fiduciary with respect to

fund substitution and deletion, Hancock was subject to ERISA's section 404 duties

of prudence and loyalty and was required to act solely in the interest of the

participants and beneficiaries of the Plans.  29 U.S.C. § 1104(a)(1).  Plaintiffs

allege that John Hancock breached this duty on several occasions.  JA 126 ¶¶ 419-

20; id. at 66 ¶ 214 n.3 (placing participants' investments in inappropriate share

classes, which "caused Plaintiffs to suffer from inferior returns on their

investments"); id. at 162 Count VII, ¶ 4 (charging excessive fees and failing to

remove the JHT-Money Market Trust as an investment option for the Plans despite

allegedly inferior returns and 2007 SEC citations for fraud and deceit by its

adviser); id. at 148 Count IV, ¶ 3.

Plaintiffs further allege that John Hancock violated its fiduciary duties by

causing the Plans to pay unreasonable and excessive administrative and investment

management fees. JA 32 ¶ 21. All the fees Hancock received came from assets of

the Plans. John Hancock's fees for a particular fund included an administrative

maintenance charge ("AMC"), a sales and service ("S&S") fee, and the underlying

mutual fund fee. John Hancock assessed these combined fees at the sub-account

level. Id. at 64 ¶¶ 202-04.[2]

The contracts between the Plans' sponsors and John Hancock set a maximum

AMC for each investment option but allowed John Hancock discretion to reduce

that fee if offset by other fees or to increase the fee to the maximum. JA 121 ¶

399. Additionally, John Hancock contractually retained the sole discretion to

increase the maximum AMC for a fund if it provided three months' notice to the

Plan. Contract with J & H Berge, JA 215; Contract with Scibal Assocs., JA 273.

The Plans had no right under the contract to disapprove an increase, while John

Hancock could charge a contract termination fee to penalize the Plans if they

---

[2] John Hancock also received revenue sharing payments from the independent
(non-Hancock) mutual funds it selected, allegedly as compensation for reducing
administrative costs to the mutual funds by pooling participants' monies into sub-
accounts. Santomenno II, 2013 WL 3864395, at *2; JA 34 ¶ 30.

objected to the new maximum AMC and wanted to terminate the contracts.  Id. at

65 ¶ 213; Contract with J & H Berge, id. at 221 (discussing application of a

"discontinuance charge" in relation to termination of the contract).

For example, in the Group Annuity Contract with Plaintiff Santomenno's

employer, the maximum AMC for each investment option was set at 1.00% of the

total value of the sub-account.  Contract with J & H Berge, JA 227-66.  Because

the initial AMC for each investment option generally ranged from .00% to .45%,

plaintiffs allege that John Hancock retained the authority to significantly increase

the actual AMC, up to the 1.00% maximum, without giving any notice to the

Plans.  See, e.g., Second Amended Complaint ("SAC") Table III, id. at 191-201.

This discretionary authority made John Hancock a fiduciary with respect to setting

fees and subject to the requirements of sections 404(a)(1) and 406(a) and (b) of

ERISA.  SAC Counts I-V, JA 136-57.  The complaint alleges instances where John

Hancock used its discretion to amend its fees from 2008 to 2009.  See, e.g., SAC

Table III, JA 196-97 (AMC for the Columbia Value and Restructuring Investment

Option increased from its initial value of .15% to .25% between 2008 and 2009;

AMC for the American Funds Europacific Growth Investment Option increased

from its initial value of .00% to .50% between 2008 and 2009).  Plaintiffs thus

allege that John Hancock breached its fiduciary duties by setting excessive AMC

fees.  Id.

Plaintiffs similarly allege that John Hancock unilaterally set S&S fees and retained those fees as revenue for itself.  JA 65, 77, 80-81 ¶¶ 207, 257, 270-73. The S&S fee is not included in the contracts or otherwise agreed to by the Plans but is disclosed to participants through the "Your Investment Options" booklet. See Contract with J & H Berge, JA 209-66; Contract with Scibal Assocs., JA 268-309; "Your Investment Options," JA 318; SAC ¶ 207.  Plaintiffs also allege that John Hancock unilaterally caused them to pay excessive fees by investing their funds in share classes charging higher fees than other classes in the same fund. SAC Count II, ¶ 6, JA 141-42; Count IV, ¶¶ 3-6, JA 149.  Plaintiffs claim John Hancock acted imprudently in charging excessive fees to their accounts and failing to negotiate the removal of 12b-1 fees charged by the underlying mutual funds, and that it committed prohibited transactions by unilaterally setting fees for itself.  JA 34 ¶ 30.

2.  District court decision.  On July 24, 2013, the district court granted John Hancock's motion to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) on the ground that John Hancock was not an ERISA fiduciary for the purpose of any claim asserted in this case.  Santomenno II, 2013 WL 3864395, at *8.  Because the Plans could initially select a smaller menu of investments from the options offered by John Hancock, the court concluded that the Plans, not John Hancock, had ultimate authority over which investments were included in the

Plans even though John Hancock reserved the right to substitute or delete the funds available to the Plans' participants without seeking or obtaining permission from the Plans.  Id. at *7-8.  The court was also unpersuaded that John Hancock's Fiduciary Standards Warranty established fiduciary status, finding that it was meant as a guarantee for plan sponsors without warranting that John Hancock itself was a fiduciary.  In so holding, the court declined to follow Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189 (D. Mass. 2008), and Santomenno v. Transamerica Life Ins. Co., 2013 WL 603901 (C.D. Cal. 2013), both of which found an insurance company to be a fiduciary under what the court termed nearly identical facts.  Santomenno II, 2013 WL 3864395, at *8.

The district court similarly found that John Hancock was not a fiduciary with respect to the setting of its own fees.  The court found that it had negotiated service provider fees with the Plans at arm's length and fully disclosed those fees, and thus owed no duty to the plaintiffs with respect to those fees.  Id. at *7.  The court failed to address the alleged facts that John Hancock did not negotiate its S&S fee at all, as it was not part of the contracts with the Plans, and that John Hancock could unilaterally change the AMC without consent from the Plans up to the contractually set maximum and increase the maximum with three months' notice subject to a termination penalty if the Plans refused to pay.

9

## SUMMARY OF ARGUMENT

Under ERISA's broad, functional definition, a person is a "fiduciary" to the extent he "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  John Hancock retained discretionary authority to unilaterally substitute and delete mutual funds from the Plans' previously-selected investment options and to change the share classes of the particular funds in which participants' monies were invested.   This included the unilateral authority to take plan assets invested in one fund and to invest them in a fund if its choosing.  John Hancock also retained discretionary authority to set fees for its own benefit.  Further, it exercised this twin authority through affirmative acts or by omission on an ongoing basis.  Accordingly, John Hancock functioned as a fiduciary and was subject to ERISA's fiduciary obligations.  Indeed, John Hancock continually monitored the Plans' investment options on a "daily, monthly, quarterly, and annual basis" through its "Underlying Fund Replacement Regimen"; provided its biannual "FundCheck Fund Review and Scorecard" program to the Plans, through which it evaluated the investment options selected for a particular plan, gave participants a "scorecard" with the results of the evaluation, and could (and sometimes did)

10

change the Plans' menus of investment options based on these results; and, through

its Fiduciary Standards Warranty, guaranteed plans meeting its terms full

compliance with ERISA's prudence requirements.

John Hancock also functioned as a fiduciary and was subject to ERISA's

fiduciary obligations in the setting of the administrative and service fees that

plaintiffs allege were excessive. The John Hancock contracts with the Plans set a

maximum administrative maintenance charge ("AMC") for each fund but John

Hancock retained discretion to increase the initial charge amount up to the

maximum without re-negotiation. John Hancock could also increase the maximum

AMC if it gave the Plans three months' notice, but the Plans' only recourse was to

pay the contractually determined penalty if they chose to terminate the contract

rather than pay the increased AMC. Hancock also unilaterally set a sales and

service ("S&S") fee which was not agreed to in the contracts with the Plans, but

only disclosed in the "Your Investment Options" booklet given to participants.

Thus, the district court erred in finding that John Hancock "did not have

ultimate authority over which investments were included in the Plans" or over the

setting of its own fees. Santomenno II, 2013 WL 3864395, at *7. The district

court's decision ignores the important fact that John Hancock not only retained the

right to substitute or delete the funds available to the Plans, but regularly

monitored the Plans and could, and on occasion did, unilaterally substitute funds

and share classes at its discretion.  Likewise, the decision ignores plausible allegations that, despite this authority, John Hancock failed to exercise this authority to eliminate funds when it would have been prudent to do so. Accordingly, plaintiffs more than sufficiently alleged plausible facts to survive a motion to dismiss on the fiduciary breach claims relating to the imprudent management or administration of plan assets and on the fiduciary breach and prohibited self-dealing claims relating to the AMC and S&S fees.

## ARGUMENT

The district court erred by concluding that John Hancock was not a fiduciary with respect to its discretionary authority to monitor Plan investments and to substitute or delete funds on the Plans' investment menus, or to change the share classes of the funds in which the participants invested, or to unilaterally set its own fees paid from plan assets.  Giving the benefit of doubt to John Hancock, the court overlooked the principle that "[f]iduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives."  Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona), 125 F.3d 715, 720 (9th Cir. 1997) (citing John Hancock Mut. Life Ins. v. Harris Trust & Sav. Bank, 510 U.S. 86, 96 (1993)).  Whether an entity is a fiduciary is a highly fact-intensive inquiry and generally cannot be determined at the pleading stage.  See, e.g., Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v.

12

Wettlin Assocs, Inc., 237 F.3d 270, 275 (3d Cir. 2001) (overturning the grant of a 12(b)(6) motion because more development was required to determine fiduciary status); In re Ikon Office Solutions, Inc. Sec. Litig., 86 F. Supp. 2d 481, 491 (E.D. Pa. 2000) (finding it premature at the pleading stage to determine defendant could not have acted as a fiduciary).

In exercising its plenary review over the district court's decision to dismiss the case on the pleadings, Santomenno v. John Hancock Life Ins. Co., 677 F.3d 178, 182 (3d Cir. 2012) cert. denied 133 S. Ct. 529 (2012); Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006), this Court must determine whether, taking all allegations in the complaint as true, plaintiffs have stated a claim for relief.  Delaware Nation, 446 F.3d at 415; Wettlin Assocs., 237 F.3d at 272.  Applying this standard to the above-stated allegations, John Hancock's motion to dismiss should not have been granted and the case should have proceeded to discovery or trial for a determination of fiduciary status and the merits of the fiduciary breach allegations.

I.      THE DISTRICT COURT ERRED IN CONCLUDING  THAT JOHN HANCOCK WAS NOT AN ERISA FIDUCIARY DESPITE ALLEGATIONS THAT IT RETAINED AND ON OCCASION ACTED ON ITS AUTHORITY TO UNILATERALLY SUBSTITUTE AND DELETE MUTUAL FUNDS FROM THE PLANS' PREVIOUSLY SELECTED INVESTMENT OPTIONS AND CHANGE THE SHARE CLASSES IN WHICH PLAN ASSETS WERE INVESTED

1.  As relevant here, section 3(21)(A) of ERISA defines "fiduciary" broadly to confer fiduciary status with respect to a plan on any person to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, … or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  Plaintiffs' allegations that John Hancock exercised "discretionary authority or discretionary control" over plan management within the meaning of the first clause of 29 U.S.C. § 1002(21)(A)(i) satisfy the threshold question in every fiduciary breach case, which is whether the defendant was acting as a fiduciary with respect to the challenged conduct.  See Pegram v. Herdrich, 530 U.S. 211, 226 (2000) (threshold question in fiduciary breach cases is whether defendant was "performing a fiduciary function . . . when taking the action subject to complaint").

As alleged, John Hancock regularly monitored the Plans and had the authority to unilaterally delete and substitute any or all funds through the Underlying Fund Replacement Regimen and the FundCheck Fund Review and Scorecard program.  JA 54 ¶ 156.  Because John Hancock could exercise this power without permission from the Plans, the Plan Trustees did not ultimately have control over whether the options they selected from John Hancock's larger menu

remained in the Plans and whether those options would be replaced with other funds. See id. at 55-56 ¶¶ 160-61; Hecker v. Deere & Co., 556 F.3d 575, 584, reh'g denied, 569 F.3d 708 (7th Cir. 2009) (finding no fiduciary status where service provider lacked "final say" over investment decisions). John Hancock also had the discretion to change the share classes in which the plan participants' retirement savings were invested. JA 56 ¶¶ 163-64. Thus, John Hancock had the final say over which funds the participants invested in.

This Court has previously found that an entity exercised discretionary authority and control in managing a plan when it notified employee participants of changes that were not set out in the terms of the plan itself. Genter v. ACME Scale & Supply Co., 776 F.2d 1180, 1184-85 (3d Cir. 1985). "Discretion exists where a party has the 'power of free decision' or 'individual choice,'" as opposed to merely performing functions "which by their nature are inherently ministerial, such as clerical services" or "which are performed [solely] within the confines of plan policies and procedures." David P. Coldesina, D.D.S., P.C. v. Estate of Simper, 407 F.3d 1126, 1132 (10th Cir. 2005) (citations omitted).

2. Plaintiffs' allegations that John Hancock had and in fact exercised control over the management and disposition of the Plans' assets are also sufficient under the second clause of 29 U.S.C. § 1002(21)(A)(i) to withstand a motion to dismiss. JA 54-55, 56 ¶¶ 157, 163. Indeed, this Court has "made clear that one need not

have discretion in exercising authority or control over the management or disposition of plan assets in order to qualify as a fiduciary under § 1002(21)(A)(i)." In re Mushroom Transp. Co., Inc., 382 F.3d 325, 346 (3d Cir. 2004) (citing Wettlin Assocs., 237 F.3d at 274). "A significant difference between the two clauses [of subsection (i) of 29 U.S.C. § 1002(21)(A)] is that discretion is specified as a prerequisite to fiduciary status for a person managing an ERISA plan, but the word 'discretionary' is conspicuously absent when the text refers to assets." Wettlin Assocs., 237 F.3d at 273. This distinction is not accidental; it reflects Congress's intent to insure that all persons with any authority or control over plan assets are held to ERISA's high fiduciary standards, whereas only persons with discretionary authority or control over plan management are held to those standards. See id. Accordingly, "parties controlling plan assets are automatically in a position of confidence by virtue of that control, and as such they are obligated to act accordingly." Coldesina, 407 F.3d at 1132 (court's emphasis); see Chao v. Day, 436 F.3d 234, 236 (D.C. Cir. 2006); Olson v. E.F. Hutton & Co., Inc., 957 F.2d 622, 626 (8th Cir. 1992) ("A person who usurps authority over a plan's assets and makes decisions about the use or disposition of those assets should know they are acting as a fiduciary."); cf. Transamerica, 2013 WL 603901, at *10 (finding that "in the ERISA context, having and exercising discretionary authority are so close as to be identical, and that under ERISA, a fiduciary duty attaches not because a

party takes a discretionary action but when that party acquires the power to take a discretionary action").

John Hancock exercised control over the management and disposition of the Plans' assets because it did much more than just hold or safeguard the Plans' assets or perform other ministerial functions.  Cf. Coldesina, 407 F.3d at 1132; Mushroom Transp. Co., 382 F.3d at 346-47.  John Hancock had the authority to take a sub-account containing participants' retirement savings out of one fund and invest it in a substitute fund or invest it in a different share class of the same fund. Further, plaintiffs allege specific instances where John Hancock unilaterally changed the mutual funds into which certain sub-accounts containing plan assets were invested.  JA 54-55 ¶ 157-58.  Plaintiffs also allege specific instances where John Hancock changed the share class with respect to a particular fund in which the plaintiffs' contributions were invested.  Id. at 56 ¶ 163 (e.g., "This sub-account [referring to The Growth Fund of America] previously invested in a different share class of the underlying portfolio.  It began investing in the current share class effective on or about July 28, 2009.").  Therefore, according to the allegations in the complaint, Hancock not only had authority over plan assets, it also "exercised" that authority in an affirmative, active sense.  See Leimkuehler v. American United Life Ins. Co., 713 F.3d 905, 912-14 (7th Cir. 2013) (acknowledging the difference between the two clauses of subsection (i) and finding no "exercise" of authority

where the service provider did not substitute any fund share classes during the class period).

    3.  Plaintiffs separately alleged that John Hancock was a fiduciary with respect to fund substitution and deletion because it "ha[d] discretionary authority or discretionary responsibility" over plan administration under 29 U.S.C. § 1002 (21)(A)(iii); JA 61-62 ¶¶ 190-92.  This is sufficient to establish fiduciary status whether or not it ever <u>exercised</u> that authority.  <u>Olson v. E.F. Hutton</u>, 957 F.2d at 625 (subsection (iii) confers fiduciary status on those "who have actually been granted discretionary authority, regardless of whether such authority is ever exercised"); <u>Bd. of Trustees of W. Lake Superior Piping Indus. Pension Fund v. Am. Benefit Plan Adm'rs, Inc.</u>, 925 F. Supp. 1424, 1429 (D. Minn. 1996); <u>Greenblatt v. Prescription Plan Servs. Corp.</u>, 783 F. Supp. 814, 820 (S.D.N.Y. 1992).  In a case involving similar allegations, a Connecticut district court distinguished <u>Leimkuehler</u> on this basis because the Second Circuit has recognized that subsections (i) and (iii) provide distinct avenues for establishing fiduciary status.  <u>See</u> <u>Healthcare Strategies v. ING Life Ins. & Annuity Co.</u>, --F.Supp.2d-- ,2013 WL 4446919, at *6 (D. Conn. 2013).  This Court has similarly recognized this distinction.  <u>See</u> <u>Wettlin Assocs.</u>, 237 F.3d at 274; <u>Hozier v. Midwest Fasteners, Inc.</u>, 908 F.2d 1155, 1162 (3d Cir. 1990).  In <u>Leimkuehler</u>, the court focused on subsection (i) and did not even consider fiduciary status under

subsection (iii).  See 713 F.3d 905.  For this reason and because, as we discussed

above, John Hancock actually exercised its authority over plan assets, this Court

can find that John Hancock is a fiduciary under section 3(21)(A)(iii) without

disagreeing with the holding in Leimkuehler.[3]

Moreover, the Supreme Court has interpreted "administration" under ERISA

to include "activities that are the ordinary and natural means of achieving the

objective of the plan."  Varity Corp. v. Howe, 516 U.S. 489, 504 (1996); accord

Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 422 (3d Cir. 2013).  This

Court has also held that "explaining plan benefits and business decisions about

plan benefits" to employees is fiduciary activity.  Adams v. Freedom Forge Corp.,

204 F.3d 475, 492 (3d Cir. 2000).  Here, John Hancock explained its fee structure

in the "Your Investment Options" booklet it distributed to participants.  JA 52, 54-

55 ¶ 146, 157; "Your Investment Options," id. at 318.  It also described the results

of its evaluations in its Fundcheck Fund Review and Scorecard, which was

distributed to the Plans.  Id. at 62 ¶ 191.  Thus, apart from its management and

control over plan management and assets within the terms of the first subsection of

the "fiduciary" definition, John Hancock's "discretionary authority to change the

---

[3] The Secretary disagrees with the holding in Leimkuehler v. American United Life
Ins. Co. as to what activities constitute an exercise of discretion. This case,
however, is factually distinguishable from Leimkuehler because here there are
allegations of affirmative exercise of discretion, such as substituting mutual funds
and substituting share classes.  SAC ¶¶ 157, 163.

funds available to 401(k) plans supports fiduciary status under subsection three of

29 U.S.C. section 1002(21)(A)." Healthcare Strategies, 2013 WL 4446919, at *7.

4.  Thus, the district court erred in holding that John Hancock was not a

fiduciary because it "did not have ultimate authority over which investments were

included in the Plans." Santomenno II, 2013 WL 3864395, at *7.  Instead, the

allegations that John Hancock had the ability to unilaterally delete or substitute any

or all funds and change share classes suffice to state a claim that it exercised

"authority or control respecting the management or disposition" of the Plans' assets

under 29 U.S.C. § 1002(21)(A)(i) and "ha[d] any discretionary authority or

discretionary responsibility in the administration of such plan" under 29 U.S.C. §

1002(21)(A)(iii).

Despite recognizing that two other district court decisions that found

fiduciary status – Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189 (D.

Mass. 2008) and Santomenno v. Transamerica Life Ins. Co., 2013 WL 603901

(C.D. Cal. 2013) –  involved cases with "nearly identical facts," the district court in

this case declined to follow those decisions and instead purported to apply the

Third Circuit's decision in Renfro v. Unisys Corp., 671 F.3d 314 (3d Cir. 2011).

Santomenno II, 2013 WL 3864395, at *7.  Renfro, however, is factually

distinguishable from this case.  There, Fidelity was a plan service provider whose

limited role did not involve "the selection and maintenance of the mix and range of

investment options included in the plan." <u>Renfro</u>, 671 F.3d at 323.  Fidelity only

had control over the investments that were to be administered by Fidelity, and the

employer, Unisys, was free to add non-Fidelity funds to its plan and administer

those investments itself.  <u>Id.</u>  This Court therefore declined to find Fidelity a

fiduciary with respect to the fund options.  <u>Id.</u>  In this case, John Hancock retains

the discretion to substitute and delete funds from its menu, and thereby from the

Plans' and participants' menus, without approval from the employers or

participants.  JA 52-53, 55 SAC ¶¶ 151, 158.  John Hancock's discretion over

ongoing fund selection – giving it, not the employer, the "final say" (<u>Hecker</u>, 556

F.3d at 584) over plan investment options – is much greater than Fidelity's was in

<u>Renfro</u>.  Thus, this Court's conclusion in <u>Renfro</u> that Fidelity was not acting as a

fiduciary in the circumstances of that case does not warrant a similar conclusion

under the facts alleged here.  <u>Cf.</u> <u>Danza v. Fidelity Management Trust Co.</u>, ___

Fed. Appx. ___, 2013 WL 3872118, at *2-3 (3d Cir. 2013) (unpublished) (Fidelity

not a fiduciary in negotiating fees for domestic relations order services because the

fee structure was set in an agreement with the plan sponsor and Fidelity did not

have unilateral discretion to change it).

5.  The Secretary's guidance on this issue is also instructive.  In a 1997

advisory letter, the Secretary stated that a company that provided ministerial

services to a plan and retained the right to delete or substitute available investment

options was not a fiduciary if the named fiduciary could decide whether to accept or reject the change.  <u>See</u> Department of Labor Op. 97–16A, 1997 WL 277979, at *5 (May 22, 1997).  The Secretary's advisory letter contemplated a company providing advance notice to a named plan fiduciary before changing investments and giving the fiduciary a reasonable amount of time to either accept the change or reject the change and terminate the company's services <u>without penalty</u>.  <u>Id.</u> Conversely, when the company can unilaterally substitute or delete available funds without approval from the employer fiduciary, that company may be a fiduciary. <u>See Charters</u>, 583 F. Supp. 2d at 198.  Here, the only recourse for the employer fiduciary is to terminate the contract after the substitution or deletion and pay a penalty. The termination fee creates an obstacle for employers wishing to terminate contracts and requires them to choose between paying a termination fee or accepting Hancock's unilateral substitution or deletion of funds.  <u>See Transamerica</u>, 2013 WL 603901, at *8; <u>Charters</u>, 583 F. Supp. 2d at 199.  The plaintiffs, therefore, "did not have a meaningful opportunity to reject substitutions." <u>Charters</u>, 583 F. Supp. 2d at 199.  Here, plaintiffs allege that John Hancock retained the unilateral right to substitute or delete investment options without prior notice.  <u>See</u> JA 54-55, 65 ¶ 155-61, 213.  Under the Secretary's guidance, John Hancock was therefore a fiduciary in that respect.

6. The district court also erred by finding that the reservation of "the right to substitute or delete the funds available to the plan" did not relate to any alleged breach. <u>Santomenno II</u>, 2013 WL 3864395, at *8. Here plaintiffs allege that John Hancock violated its duties of prudence and loyalty under section 404(a)(1) by failing to delete an overpriced and underperforming money market fund as an investment option. <u>Santomenno II</u>, 2013 WL 3864395, at *7; JA 126 ¶ 419-20. John Hancock's power to change investments and share classes is obviously and logically related to this claim. Likewise, as we discuss in the next section, plaintiffs' claim that John Hancock is a fiduciary by virtue of setting its own fees is the very basis for its prohibited transaction claims.

II. THE DISTRICT COURT ERRED IN CONCLUDING THAT JOHN HANCOCK WAS NOT AN ERISA FIDUCIARY DESPITE RETAINING UNILATERAL AUTHORITY TO SET ITS OWN ADMINISTRATIVE FEES PAID FROM ERISA-COVERED PLAN ASSETS

The district court also erred in finding that John Hancock was not a fiduciary with respect to setting its own fees to be paid with plan assets. As set forth in its contracts with the Plans, John Hancock retained the sole discretion to increase the maximum AMC with three months' notice and could impose a penalty if the Plans terminated the contract as a result. Contract with J & H Berge, JA 226, 280; Contract with Scibal Assocs., JA 290; JA 65 ¶ 213. The termination fee deterred employers wishing to terminate contracts and required them to choose between

paying a termination fee or paying an AMC that they found to be excessive.  <u>See</u> <u>Transamerica</u>, 2013 WL 603901, at *8; <u>Charters</u>, 583 F. Supp. 2d at 199.  The plaintiffs, therefore, "did not have a meaningful opportunity to reject substitutions." <u>Charters</u>, 583 F. Supp. 2d at 199.

John Hancock additionally retained the authority to raise the AMC from its initial level, usually between .00% and .45% of the total value of the sub-account, up to 1.00% of the total value of the sub-account without providing any notice to the Plans.  Contract with J & H Berge, JA 227-66; <u>see</u>, <u>e.g.</u>, SAC Table III, JA 191-201.  When an agreement with an ERISA-covered plan gives a party sufficient "control over factors that determine the actual amount of its compensation . . . the person thereby becomes an ERISA fiduciary with respect to that compensation." <u>F.H. Krear & Co. v. Nineteen Named Trs.</u>, 810 F.2d 1250, 1259 (2d Cir. 1987). That is the case here.

The district court rejected plaintiffs' argument that John Hancock became a fiduciary by setting its own fees because it found that "all of these fees were fully disclosed to the Trustees and plan participants." <u>Santomenno II</u>, 2013 WL 3864395, at *1.  In <u>Charters</u>, however, the court correctly held that defendant John Hancock was a fiduciary by virtue of the fact that it "retained sole discretion to change the maximum administrative maintenance charge at any time upon three-months prior written notice to Charters."  As here, there was a penalty for

withdrawing from the arrangement.  The court held that "[t]hat discretion was sufficient to make Hancock an ERISA fiduciary with respect to its fees."  Charters, 583 F. Supp. 2d at 198.  In Charters, Hancock also "had the sole authority to set the administrative maintenance charge, limited only by a maximum charge for each sub-account."  Id. at 197.  The Charters court additionally found that  John Hancock's fees were not fully disclosed because while it disclosed a maximum AMC, it did not disclose how any changes in the AMC would be calculated.  Id. at 199.  The facts in this case are nearly identical.  Plaintiffs here allege that John Hancock has the sole authority to set a maximum AMC and then reduce the actual AMC by the amounts it receives in other fees, including revenue-sharing payments.  JA 121 ¶ 399.  John Hancock thus used its discretionary authority over the AMC to determine what percent, up to the contractual maximum, to charge. Id.; see Charters, 583 F. Supp. 2d at 198.  As in Charters, plaintiffs further allege that John Hancock does not describe its calculations or explain what services the AMC covers.  JA 76-77, 121 ¶¶ 253-55, 399.

Plaintiffs similarly allege that John Hancock unilaterally set S&S fees and retained those fees as revenue for itself.  JA 65, 77, 80-81 ¶¶ 207, 257, 270-73. The S&S fee is not set forth in the contracts that the Plans agreed to but is disclosed to participants through the "Your Investment Options" booklet, which is not a contractual agreement or incorporated in the agreement signed by the Plans.

See Contract with J & H Berge, JA 209-66; Contract with Scibal Assocs., JA 268-309; "Your Investment Options," JA 318.  The discretion John Hancock had to set these fees was thus even greater than the discretion it had with respect to the AMC fees.  At a minimum, these allegations raise material questions of whether John Hancock was acting in a fiduciary capacity when unilaterally setting and modifying the S&S fees.  Id. at 80 ¶ 270 n.7.  Accordingly, the district court should not have dismissed the claims alleging fiduciary breaches in the setting of these allegedly excessive fees.

CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court

reverse the decision of the district court.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

G. WILLIAM SCOTT
Acting Associate Solicitor
Plan Benefits Security Division

NATHANIEL I. SPILLER
Counsel for Appellate and Special Litigation


_/s/_____
Radha Vishnuvajjala
Trial Attorney
U.S. Department of Labor
Room N-4611
200 Constitution Ave., N.W.
Washington, D.C. 20210
(202) 693-5790

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

FOR CASE NO. 13-3467

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains 6314 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010, Times New Roman, 14 point font.


_/s/_____
NATHANIEL I. SPILLER
Counsel for Appellate and Special Litigation
U.S. Department of Labor
Plan Benefits Security Division
Dated: January 21, 2014


## CERTIFICATE OF VIRUS CHECK

I hereby certify that a virus check, using McAfee Security VirusScan Enterprise 8.0, was performed on the PDF file and paper version of this brief, and no viruses were found.

_/s/_____
NATHANIEL I. SPILLER
Counsel, U.S. Department of Labor,
Plan Benefits Security Division
Dated: January 21, 2014

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local Rules 28.3(d) and 46.1(e), the undersigned counsel certifies that

he has been admitted to this Court.


_/s/_____
Nathaniel I. Spiller
Dated: January 21, 2014

CERTIFICATE OF SERVICE AND ECF COMPLIANCE

I certify that on this 21st day of January, 2014, I caused the Brief of the Secretary

of Labor as Amicus Curiae to be electronically filed via the Court's CM/ECF

system.  I further certify that I caused 10 copies of the Brief to be dispatched to the

Clerk of this Court by United Parcel Service.  I certify that I served of this Brief

electronically on the following counsel of record:


Robert L. Lakind, Esq.                         Brian J. McMahon, Esq.
Arnold C. Lakind, Esq.                         J. Brugh Lower, Esq.
Robert E. Lytle, Esq.                          Gibbons, PC
Szaferman, Lakind, Blumstein & Blader, P.C.    One Gateway Center
101 Grovers Mill Road, Suite 200               Newark, NJ 07102
Lawrenceville, NJ 08648

Moshe Maimon, Esq.                             James O. Fleckner, Esq.
Levy, Phillips & Konigsberg, LLP               Alison V. Douglass, Esq.
800 Third Avenue, 13th Floor                   Daniel Condon
New York, NY 10022                             Goodwin Procter LLP
                                               Exchange Place
                                               Boston, MA 02109


                                               _/s/_____
                                               Nathaniel I. Spiller
                                               Dated: January 21, 2014

<u>CERTIFICATE OF SERVICE AND ECF COMPLIANCE</u>
<u>(CONTINUED)</u>

I certify that the text of the electronic version of the Brief that was filed via the

Court's CM/ECF system is identical to the paper copies that were dispatched to the

Court.


_/s/_____
Nathaniel I. Spiller
Dated: January 21, 2014