No. 13-3467

## IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

DANIELLE SANTOMENNO, for the use and benefit of the John Hancock Trust and the John Hancock Funds II; KAREN POLEY and BARBARA POLEY, for the use and benefit of the John Hancock Funds II; DANIELLE SANTOMENNO, KAREN POLEY and BARBARA POLEY, individually and on behalf of Employee Retirement Income Security Act of 1974, as amended ("ERISA"), employee benefit plans that held, or continue to hold, group variable annuity contracts issued/sold by John Hancock Life Insurance Company (U.S.A.), and the participants and beneficiaries of all such ERISA covered employee benefit plans; and DANIELLE SANTOMENNO, individually and on behalf of any person or entity that is a party to, or has acquired rights under, an individual or group variable annuity contract that was issued/sold by John Hancock Life Insurance Company (U.S.A.) where the underlying investment was a John Hancock proprietary fund contained in the John Hancock Trust,

Plaintiffs-Appellants,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.), JOHN HANCOCK INVESTMENT MANAGEMENT SERVICES, LLC, JOHN HANCOCK FUNDS, LLC, and JOHN HANCOCK DISTRIBUTORS, LLC,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of New Jersey
Civil Action No. 2:10-cv-01655-WJM-MF

**BRIEF OF *AMICUS CURIAE***
**AMERICAN COUNCIL OF LIFE INSURERS**
**SUPPORTING AFFIRMANCE IN FAVOR OF DEFENDANTS**

Lisa Tate
Vice President, Litigation &
  Associate General Counsel
American Council of Life Insurers
101 Constitution Avenue, NW
Suite 700
Washington, DC 20001
Tel: (202) 624-2153
Fax: (866) 953-4096
lisatate@acli.com

Eric S. Mattson
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel:    (312) 853-7000
Fax:    (312) 853-7036
emattson@sidley.com

## United States Court of Appeals for the Third Circuit

### Corporate Disclosure Statement and Statement of Financial Interest

No. 13-3467

DANIELLE SANTOMENNO, et al.,
Plaintiffs-Appellants,

v.

JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.),
et al.,
Defendants-Appellees

#### Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. An original and three copies must be filed. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

American Council of Life Insurers

(Name of Party)

1) For non-governmental corporate parties please list all parent corporations: None

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

None

3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

N/A

4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

N/A

Eric S. Mattson

(Signature of Counsel or Party)

Dated: 3/14/14

rev: 12/1998                    (Page 2 of 2)

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

IDENTITY AND INTEREST OF *AMICUS CURIAE* ..........................................1

ARGUMENT ...........................................................................................3

I.   The 401(k) Landscape: A Primer on the Service Provider
     Industry and Insurance Companies' Role in It. ..........................3

     A.   Service Providers ...............................................................3

     B.   Service Providers and Fiduciary Status............................6

II.  Subsection (i) of ERISA's Definition of Fiduciary Does
     Not Apply to Service Providers Like Hancock in the
     Circumstances Alleged Here.......................................................11

III. Plaintiff's "Investment Advice" Theory of Fiduciary
     Status Is Inconsistent With Settled Law. ...................................17

IV.  The "Plan Administration" Prong of ERISA's Definition
     of "Fiduciary" Does Not Apply to the Types of Activities
     at Issue in This Case. ................................................................18

CONCLUSION ........................................................................................21

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a) ................23

CERTIFICATION OF BAR MEMBERSHIP.......................................................24

CERTIFICATE OF SERVICE AND ECF COMPLIANCE ..............................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beddall v. State St. Bank & Trust Co.*,
  137 F.3d 12 (1st Cir. 1998) .............................................................12

*Christopher v. SmithKline Beecham Corp.*,
  132 S. Ct. 2156 (2012).....................................................................21

*Cooper v. IBM Personal Pension Plan*,
  457 F.3d 636 (7th Cir. 2006) ...........................................................16

*Foltz v. U.S. News & World Report, Inc.*,
  627 F. Supp. 1143 (D.D.C. 1986) ....................................................17

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*,
  302 F.3d 18 (2d Cir. 2002) ...............................................................11

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir.) ...........................................................7, 8, 15

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
  552 U.S. 248 (2008)............................................................................3

*Leimkuehler v. American United Life Ins. Co.*,
  713 F.3d 905 (7th Cir. 2013).....................................................*passim*

*Leimkuehler v. American United Life Insurance Co.*,
  No. 1:10-cv-333, 2012 WL 28608 (S.D. Ind. Jan. 5, 2012)............18

*Mertens v. Hewitt Assocs.*,
  508 U.S. 248 (1993).......................................................................6, 9

*Mogel v. UNUM Life Ins. Co.*,
  547 F.3d 23 (1st Cir. 2008) ..............................................................19

*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*,
  669 F.3d 374 (3d Cir. 2012) .............................................................12

*Pegram v. Herdrich,*
  530 U.S. 211 (2000)..................................................................9, 10, 20

*Pennsylvania Dept. of Public Welfare v. U.S. Dept. of Health & Human
  Servs.,* 101 F.3d 939 (3d Cir. 1996) .........................................12, 18

*Renfro v. Unisys Corp.,*
  671 F.3d 314 (3d Cir. 2011) ........................................................5, 15

*Trustees of the Graphic Comm'ns Int'l Union Upper Midwest Local 1M
  Health & Welfare Plan v. Bjorkedal,* 516 F.3d 719 (8th Cir. 2008) ...........12, 13

*TRW Inc. v. Andrews,*
  534 U.S. 19 (2001)...............................................................................19

### STATUTES

29 U.S.C. § 1002(21)(A) ..................................................................*passim*

29 U.S.C. § 1104(a)(1) ...............................................................................6

29 U.S.C. § 1106(b)....................................................................................6

29 U.S.C. § 1109..................................................................................6, 9

### OTHER AUTHORITIES

29 C.F.R. § 2550.408b-2 (2012)....................................................................8

77 Fed. Reg. 5632 (Feb. 3, 2012) .................................................................8

Fed. R. App. P. 29(c)(5) .............................................................................1

Fed. R. Civ. P. 12(b)(6) .............................................................................8

Opinion 97-15A, 1997 ERISA LEXIS 18 (May 18, 1997)..............................14, 20

Opinion 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997).............................14, 20

Opinion 2003-09A, 2003 ERISA LEXIS 11 (June 25, 2003)........................14, 20

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

Pursuant to a motion under Federal Rule of Appellate Procedure 29(b), this brief is being filed by the American Council of Life Insurers, which supports the defendants-appellees, John Hancock Life Insurance Company (U.S.A.), John Hancock Investment Management Services, LLC, John Hancock Funds, LLC, and John Hancock Distributors, LLC (collectively, "Hancock"), in seeking affirmance of the decision below granting Hancock's motion to dismiss.[1]

ACLI is the largest life insurance trade association in the United States, representing the interests of more than 300 life insurer and fraternal benefit member companies in the United States. ACLI member companies are among the leading providers of retirement security products covering individual and group markets. In the United States, these companies represent more than 90 percent of the assets and premiums of the life insurance and annuity industry. Their retirement-related business includes group annuities issued to employer-sponsored retirement plans. ACLI

---

[1] Pursuant to Fed. R. App. P. 29(c)(5), ACLI states that no party's counsel authored this brief in whole or in part, and that no party, no party's counsel, and no other person contributed money intended to fund the brief's preparation or submission other than ACLI on behalf of its collective membership.

members also provide recordkeeping and other administrative services in connection with these annuity contracts. Most products sold by ACLI members in the group employee benefits market are used to fund benefits under plans subject to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

ACLI regularly advocates the interests of life insurers and their millions of policyholders and beneficiaries before federal and state legislators, state insurance commissioners, federal regulators, administration officials, and the courts. ACLI regularly files *amicus* briefs in cases, like this one, that involve issues of great importance to its members.

ACLI believes that the district court's decision is correct and that the arguments advanced by Plaintiffs and by the U.S. Department of Labor – which has filed an *amicus* brief supporting reversal – are at odds with well-settled legal principles, including principles previously espoused by the Department of Labor. ACLI's members have developed their business models in reliance on these settled principles. Thus, if the decision below were reversed, it would raise significant concerns and, potentially, have real consequences for the business operations of ACLI members.

<u>**ARGUMENT**</u>

**I.    The 401(k) Landscape: A Primer on the Service Provider Industry and Insurance Companies' Role in It.**

**A.    Service Providers**

This case involves 401(k) plans, a species of "defined contribution"

plans. "Defined contribution plans dominate the retirement plan scene

today." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255 (2008). The

U.S. Department of Labor oversees around half a million such plans

around the country. *See* U.S. Dept. of Labor, Fact Sheet (Feb. 2012),

available at <u>http://www.dol.gov/ebsa/newsroom/fs408b2finalreg.html</u>.

These plans range in size from "micro" plans with just a handful of

participants to "jumbo" plans with tens of thousands of participants.

For the most part, the responsible plan fiduciaries of 401(k) plans (i.e.,

employers, sponsors, trustees, or other fiduciaries named in plan

documents) are not equipped to create a platform of investment options for

plan participants, nor are they equipped to provide the technology-heavy

record-keeping and other services that must be provided for a 401(k) plan

to work. Instead, those tasks are provided by the service provider industry.

This industry "is – and always has been – extremely competitive." 2013

Recordkeeping Survey, *Plan Sponsor*, available at

http://plansponsor.com/RK_Survey_2013.aspx. The competitors in the

marketplace include not only insurance companies like Hancock, but also

mutual fund companies, banks, consulting firms, third-party

administrators, brokerage firms, accounting firms, and payroll providers.

Keith Clark, *The Defined Contribution Handbook* 26-27 (2003).

Just like service providers in other contexts, service providers in the

401(k) industry compete on both price and service. If responsible plan

fiduciaries become dissatisfied with their provider's mix of service and

fees, or if they learn they can get a better deal elsewhere, they can switch

providers, usually without penalty. The fiduciaries of the plans in which

Plaintiffs were participants did exactly that, and did so without penalty.

(As Hancock explains in its brief, the Department of Labor has misread the

pertinent contracts when it suggests that there was a penalty associated

with those decisions. *See* Hancock Br. at 1, 10 & n.6, 32-33.)

Service providers play an important but limited role in the operation of

401(k) plans. For the most part, their services fall into two broad categories:

(1) access to a platform of investment vehicles through group variable

annuity contracts, and (2) record-keeping and other administrative

4

services. *See, e.g.*, *Renfro v. Unisys Corp.*, 671 F.3d 314, 318 (3d Cir. 2011)

(noting that the service provider in that case, Fidelity, provided

"administrative services bundled with the investment options");

*Leimkuehler v. American United Life Ins. Co.*, 713 F.3d 905, 908-09 (7th Cir.

2013) (noting that insurance company service provider supplied

investment platform and record-keeping services), *cert. denied*, 82 U.S.L.W.

3283 (Feb. 24, 2014).

The description above applies generally to 401(k) service providers,

including insurance companies. The nature of insurance companies makes

their structure a little different from those of other competitors, and

Hancock's structure conforms to the insurance company model.

Specifically, Hancock provides its investment platform via an insurance

product, a group variable annuity contract. Pl. Br. at 5; *Leimkuehler*, 713 F.3d

at 908. The assets in the contract are held in "separate accounts." In the

insurance world, a separate account is just what it sounds like: an account

that is kept separate from the company's general account. *Leimkuehler*, 713

F.3d at 908. Participants in a 401(k) plan can select investment options such

as mutual funds that are available through a separate account, in which

case they experience the return of the underlying investment options without buying them directly. Pl. Br. at 7; *Leimkuehler*, 713 F.3d at 908.

### B.    Service Providers and Fiduciary Status

With rare exceptions, service providers' agreements with responsible plan fiduciaries are structured with the mutual expectation that the provider will not assume fiduciary responsibility. Fiduciary status creates significant obligations and greater exposure to legal liability, which in turn can drive up the costs of 401(k) services to participants and their employers. *See generally* 29 U.S.C. § 1104(a)(1) (listing obligations of ERISA fiduciaries); *id.* § 1106(b) (listing transactions fiduciaries are generally prohibited from entering); *id.* § 1109 (assigning liability for breaches of fiduciary duty); *cf. Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (declining to impose fiduciary liability on non-fiduciary service providers in part because it would result in higher costs to ERISA plans). In reliance on principles drawn from judicial opinions and Department of Labor pronouncements, service providers have created business models that leave ultimate control over plan investments – and therefore fiduciary decision-making – in the hands of the responsible plan fiduciary.

6

Service providers have been able to maintain their status as non-fiduciaries by going to market with broad but finite menus of investment options. The menus often offer dozens or even hundreds of options, but are still far smaller than the total number of investment options that exist in the general marketplace. *See, e.g.*, *Leimkuehler*, 713 F.3d at 909-10 (noting that service provider offered fewer than 400 funds out of roughly 7,500 funds available in the marketplace); *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir.) (noting that menu was limited to Fidelity funds), *reh'g denied in supplemental opinion*, 569 F.3d 708 (7th Cir. 2009). After the responsible plan fiduciary hires the service provider, that same fiduciary then chooses a subset of investment options from the provider's investment platform, or "Big Menu" of options, creating a "Small Menu" that participants, in turn, use to create their own investment portfolios. *See, e.g.*, *Leimkuehler*, 713 F.3d at 909-10.

This general model – which, again, is the type of model Hancock uses – conforms to settled principles about what service providers can do and still maintain their non-fiduciary status. To date, three Court of Appeals opinions have addressed the question of the fiduciary status of 401(k) service providers, and all three have rejected plaintiffs' (and the

7

Department of Labor's) theories. *Leimkuehler*, 713 F.3d at 911-14; *Renfro*, 671 F.3d at 322-25; *Hecker*, 556 F.3d at 583-84. And two of the opinions, *Renfro* and *Hecker*, affirmed dismissals under Fed. R. Civ. P. 12(b)(6) based on the absence of any pertinent fiduciary status – a fact in tension with the Department of Labor's suggestion that fiduciary status "generally cannot be determined at the pleading stage." *See* DOL Br. at 12.

Further support for the principle that service providers are generally not ERISA fiduciaries can be found in the Department of Labor's discussion of its rule requiring the disclosure of service providers' fees. *See generally* 77 Fed. Reg. 5632 (Feb. 3, 2012); 29 C.F.R. § 2550.408b-2 (2012). When it explained the rule, the Department drew a clear line between responsible plan fiduciaries on the one hand and service providers on the other – and advised that it is up to the former to monitor and judge the reasonableness of the fees of the latter. In a "Fact Sheet" issued with the rule, the Department explained that ERISA "requires plan fiduciaries, when selecting and monitoring service providers and plan investments, to act prudently and solely in the interest of the plan's participants and beneficiaries." U.S. Dept. of Labor, Fact Sheet, available at http://www.dol.gov/ebsa/newsroom/fs408b2finalreg.html. It continued:

8

"Responsible plan fiduciaries also must ensure that arrangements with their service providers are 'reasonable' and that only 'reasonable' compensation is paid for services." *Id.* The new rule, the Department said, was intended to allow plan fiduciaries to "make informed decisions" about service providers. *Id.*

\* \* \*

When it enacted ERISA, Congress "resolved innumerable disputes between powerful competing interests – not all in favor of potential plaintiffs." *Mertens*, 508 U.S. at 262. This principle holds true with respect to ERISA's definition of fiduciary, a linchpin to liability under the statute, *see* 29 U.S.C. § 1109 (explaining scope of fiduciary liability under ERISA), and the focus of this appeal. All parties agree that Hancock cannot be held liable unless it acted as a fiduciary under one of the three prongs of ERISA's definition of fiduciary and did so "when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

ERISA defines "fiduciary" in functional terms, *Mertens*, 508 U.S. at 262, so if a service provider performs one of those functions, and does so "when taking the action subject to complaint," *Pegram*, 530 U.S. at 226, then it may face potential liability. But the definition of "fiduciary" is limited by its

9

language and its structure. *See* 29 U.S.C. § 1002(21)(A). The definition has three subsections, but because one subsection has two parts, there are actually four distinct prongs. *Id.* The question in this appeal is whether Plaintiffs have plausibly alleged that Hancock, a 401(k) service provider, acted as a fiduciary "when taking the action subject to complaint," *Pegram*, 530 U.S. at 226, namely "the charging of alleged[ly] excessive fees." *See* Pl. Br. at 12.

Between them, Plaintiffs and the Department of Labor contend that Hancock became a fiduciary under all four prongs. Plaintiffs advance arguments under all prongs except the second prong of subsection (i) and subsection (iii) (i.e., all except the "control over plan assets" and "plan administration" prongs), while the Department advances arguments under all prongs except subsection (ii) (i.e., all except the "investment advice" prong). As explained below and in Hancock's brief, nothing in the complaint, or in Plaintiffs' or the Department of Labor's gloss on the complaint, shows that Hancock acted as a fiduciary under any of the proffered theories.

## II. Subsection (i) of ERISA's Definition of Fiduciary Does Not Apply to Service Providers Like Hancock in the Circumstances Alleged Here.

We begin with the twin prongs of subsection (i). Interestingly, Plaintiffs do *not* contend that Hancock became a fiduciary under the "control over plan assets" prong of subsection (i), which confers fiduciary status on a person who "exercises any authority or control respecting management or disposition of [plan] assets." 29 U.S.C. § 1002(21)(A)(i). Instead, Plaintiffs assert only that Hancock "exercises discretionary authority or discretionary control" with respect to plan management. *Id.*; Pl. Br. at 12, 18-19, 24. The Department of Labor asserts both prongs.

The two prongs of subsection (i), however, address distinct activities: (1) discretionary management of the plan and (2) management or disposition of the plan's assets. Because the challenged activity in this case involves fees that were allegedly assessed against plan assets, the relevant prong is the one addressing plan assets. *See Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir. 2002) ("management or disposition" language in subsection (i) refers to "common transactions in dealing with a pool of assets [including] selecting investments.") (quotation marks and citation omitted). Plaintiffs' decision to eschew that prong

11

means this Court should not address it. *See Pennsylvania Dept. of Public Welfare v. U.S. Dept. of Health & Human Servs.*, 101 F.3d 939, 945 (3d Cir. 1996) ("An issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.") (quotation marks, citation and ellipsis omitted). The Department of Labor's reliance on the "plan assets" prong does not matter because Plaintiffs did not raise it. *See, e.g., New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 382 n.2 (3d Cir. 2012).

While the two prongs of subsection (i) address different subjects, they are both limited to situations where the defendant actually "exercises" authority or control in a relevant way. 29 U.S.C. § 1002(21)(A). The verb matters: "Because this subsection imposes a fiduciary duty on those not named as a fiduciary, its reach is limited to circumstances where the individual actually exercises some authority." *Trustees of the Graphic Comm'ns Int'l Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal*, 516 F.3d 719, 733 (8th Cir. 2008). That authority, moreover, must be meaningful, since "the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status." *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 18

(1st Cir. 1998). Thus, it is not enough to say, as the Department of Labor does, that a service provider "retained" authority to do something, DOL Br. at 1, or "had unilateral authority" to do something, *id.*, or "could" exercise power, *id.* at 14, or had the "ability" to do something, *id.* at 20. Only the actual "exercise" of authority can create fiduciary status under subsection (i).

Nor is it possible to "exercise" control "by omission," as the Department suggests. DOL Br. at 10. In rejecting an analogous argument, the Seventh Circuit observed that the Department's theory "is effectively a 'non-exercise' theory of exercise," and rejected it as "unworkable." *Leimkuehler*, 713 F.3d at 914. "It conflicts with a common-sense understanding of the meaning of 'exercise,' is unsupported by precedent, and would expand fiduciary responsibilities under Section 1002(21)(A) to entities that took no action at all with respect to a plan." *Id. Accord Bjorkedal*, 516 F.3d at 733 ("An act of omission fails to satisfy the requirement that the individual *exercise* discretionary authority over plan assets.") (emphasis in original). (As discussed below, the Department tries to resurrect that same discredited argument under the guise of subsection (iii).)

Before it began filing *amicus* briefs in cases like this one, the Department of Labor had acknowledged the "exercise" limitation in this very context. It issued a trilogy of opinion letters evaluating whether service providers that receive revenue sharing are fiduciaries engaged in prohibited transactions. *See* Opinion 97-15A, 1997 ERISA LEXIS 18 (May 22, 1997) ("Frost Letter"); Opinion 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997) ("Aetna Letter"); Opinion 2003-09A, 2003 ERISA LEXIS 11 (June 25, 2003) ("ABN AMRO Letter"). Although the business models varied among the service providers to whom the advisory opinions were issued, the theme of the Department's opinions was the same: A service provider acts as a fiduciary only when it "exercise[s] any authority or control to cause a plan to invest in a mutual fund that pays a fee to the [service provider] in connection with the plan's investment." Frost Letter, at *10; *accord* Aetna Letter, at *10 (analyzing whether service provider "does not exercise any authority or control to cause a plan to invest in a mutual fund"); ABN AMRO Letter, at *13 (no violation "when the decision to invest in such funds is made by a fiduciary who is independent of" the service provider).

With those principles in mind, we turn to Plaintiffs' specific allegations. Plaintiffs allege that Hancock did three things that made it a fiduciary

14

under the first prong of subsection (i): (1) "selecting a group of mutual funds from which the employer plan sponsor must choose for inclusion in its plan," (2) "monitoring the performance of those funds," and (3) "exercising authority to change both the funds included in the plans and the fees John Hancock charges for its services." Pl. Br. at 2.

The first basis for fiduciary status – that Hancock allegedly "select[ed] a group of mutual funds from which the employer plan sponsor must choose for inclusion in its plan" – runs squarely into *Renfro*, *Hecker*, and *Leimkuehler*. These cases make clear that "standing alone, the act of selecting both funds and their share classes for inclusion on a menu of investment options offered to 401(k) plan customers does not transform a provider of annuities into a functional fiduciary." *Leimkuehler*, 713 F.3d at 912. *Accord Renfro*, 671 F.3d 318-19, 323-24; *Hecker*, 556 F.3d at 583. The Department of Labor has likewise rejected the idea that a service provider assumes fiduciary status "merely by virtue of developing and presenting a list of investment options to [a plan fiduciary] for its selection as a fiduciary." *See* Brief of Sec'y of Labor as *Amicus Curiae* in Support of Plaintiffs-Appellants in *Hecker*, at 22-23, available at http://www.dol.gov/sol/media/briefs/deere(A)-04-02-2008.pdf. This sort

15

of activity is not the exercise of control; it is the offering of options that responsible plan fiduciaries are free to take or leave.

Plaintiffs' second theory – that Hancock became a fiduciary by "monitoring the performance" of the funds on its investment platform – is also a losing argument. Hancock, like other service providers, competes for 401(k) business. If it did not "monitor the performance" of its offerings, it would quickly find itself losing business. And Plaintiffs never explain how trying to create an attractive product that plan fiduciaries are free to accept or reject somehow amounts to the exercise of control over anything. The idea that investment offerings should by law be held static, with no improvements allowed, brings to mind the observation that "[i]t is possible . . . for litigation about pension plans to make everyone worse off." *Cooper v. IBM Personal Pension Plan*, 457 F.3d 636, 642 (7th Cir. 2006).

Plaintiffs' final theory of fiduciary status – that Hancock became a fiduciary by "exercising authority to change both the funds included in the plans and the fees John Hancock charges for its services" – is not plausibly pleaded in the complaint. As Hancock has explained, the complaint, despite its length, does not allege that Hancock altered any investment option while any Plaintiff was invested in it. *See* Hancock Br. at 11, 36-38,

16

51-52. In the absence of such allegations, and particularly in light of

Plaintiffs' waiver of any claim under the second prong of subsection (i),

Plaintiffs have failed to plead a plausible claim under the first subsection of

ERISA's definition of fiduciary.

## III. Plaintiff's "Investment Advice" Theory of Fiduciary Status Is Inconsistent With Settled Law.

Plaintiff – but not the Department of Labor – also contends that Hancock

became a fiduciary under the "investment advice" prong of the statutory

definition. This theory need not detain the Court for long. There is a good

reason why the Department has not joined forces with Plaintiffs on this

point: It is implausible. To accept this theory, not only would the Court

have to strike down a Department of Labor regulation that was

promulgated nearly 40 years ago; it would also have to become the first

Court of Appeals to hold that "monitoring and advising the sponsor about

the performance" of funds offered in the 401(k) plan (*see* Pl. Br. at 2) – in

other words, providing data – is somehow a fiduciary act. That has never

been the law. *See*, *e.g.*, *Foltz v. U.S. News & World Report, Inc.*, 627 F. Supp.

1143, 1167 (D.D.C. 1986). Arming the decision-maker with information to

make better decisions does not make a service provider a fiduciary.

## IV. The "Plan Administration" Prong of ERISA's Definition of "Fiduciary" Does Not Apply to the Types of Activities at Issue in This Case.

In an effort to avoid *Leimkuehler* and the "exercise" limitation of subsection (i), the Department of Labor argues that subsection (iii) of ERISA's definition of fiduciary provides an independent basis for reversing the district court. DOL Br. at 18-19. Plaintiffs make the same assertion, albeit with little enthusiasm or explanation, *see* Pl. Br. at 28 (asserting applicability of subsection (iii) in a single sentence); and by failing to explain the point they have waived it. *Pennsylvania*, 101 F.3d at 945.

Waived or not, the argument lacks merit. According to the Department, subsection (iii), which applies when a person "has any discretionary authority or discretionary responsibility" for plan administration, gives this Court a way to find Hancock a potential fiduciary "without disagreeing with the holding in *Leimkuehler*." DOL Br. at 19.[2]

This approach is too clever by half. It would eviscerate the distinction Congress drew between control over plan assets, on the one hand, and plan

---

[2] In a portion of its decision that was not appealed, the district court rejected a subsection (iii) theory of fiduciary duty in *Leimkuehler v. American United Life Insurance Co.*, No. 1:10-cv-333, 2012 WL 28608, at *13-14 (S.D. Ind. Jan. 5, 2012), *aff'd*, 713 F.3d 905 (7th Cir. 2013), *cert. denied*, 82 U.S.L.W. 3283 (Feb. 24, 2014).

administration on the other. A fiduciary is someone who "exercises any authority or control respecting management or disposition" of plan assets or, alternatively, someone who "has any discretionary authority or discretionary responsibility" for plan administration. 29 U.S.C. § 1002(21)(A)(i) & (iii). These are different things. If, as the Department now claims, activities that qualify as "management or disposition of assets" were simply a subset of the activities that qualify as "plan administration," there would be no need for subsection (i). *Cf. Mogel v. UNUM Life Ins. Co.*, 547 F.3d 23, 27 (1st Cir. 2008) (recognizing that the two subsections cover distinct activities). The Department's position would also make the "exercise" requirement of subsection (i) meaningless. It could easily be evaded by alleging that the defendant *could* have done something; and even if he did not do that thing, his theoretical ability to do it is enough to make him a fiduciary under subsection (iii). This would violate the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citations omitted).

19

Moreover, the activities the Department says qualify as "plan administration" – Hancock explaining its fee structure and providing data about fund performance, *see* DOL Br. at 19 – are not the actions "subject to complaint" in this lawsuit, *Pegram*, 530 U.S. at 226. As a result, for present purposes they are irrelevant. A person is a fiduciary only "to the extent" he does certain things, 29 U.S.C. § 1002(21)(A), which means that, absent a nexus between the fiduciary act and the alleged breach, there is no viable claim.

The *post hoc* nature of the Department's subsection (iii) argument is illustrated by its absence from other Department statements that would have included it if it had been thought to be plausible. For example, the Department did not rely on subsection (iii) in its *amicus* briefs in *Hecker* or *Leimkuehler*. Both briefs instead focused on subsection (i). Nor does subsection (iii) feature in the Department's analysis of fiduciary status in the trio of advisory opinions it issued about service providers and revenue sharing. *See* Opinion 97-15A, 1997 ERISA LEXIS 18 (May 22, 1997); Opinion 97-16A, 1997 ERISA LEXIS 17 (May 22, 1997); Opinion 2003-09A, 2003 ERISA LEXIS 11 (June 25, 2003). Subsection (iii)'s belated appearance comes only after the ruling in *Leimkuehler*, which rejected the Department's

20

effort to read the "exercise" requirement out of subsection (i). *Leimkuehler*, 713 F.3d at 914. As the Department acknowledges, its subsection (iii) argument is intended to give this Court a way to reverse the district court without expressly disagreeing with its sister circuit's ruling in *Leimkuehler*. *See* DOL Br. at 19. For all the reasons outlined above, the Court should decline that invitation.

## CONCLUSION

Both Plaintiffs and the Department of Labor have offered theories that are at odds with settled principles about fiduciary status under ERISA. ACLI's members, including Hancock, have relied on those principles in creating their business models, with the good faith intention of avoiding fiduciary status of the sort asserted here. If those principles are to be changed, the proper way to change them is through legislation or notice-and-comment rulemaking – not through litigation and *amicus* briefs. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (internal quotation marks and citation omitted) (declining to defer to Department of Labor's interpretation of its own regulation because the interpretation was "plainly erroneous or inconsistent with the regulation" and "conflicts with a prior interpretation").

For the foregoing reasons, the ACLI respectfully requests that the Court affirm the judgment of the district court.

Respectfully submitted,

AMERICAN    COUNCIL    OF    LIFE
INSURERS

/s/ Eric S. Mattson

Eric S. Mattson
Sidley Austin LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel:   (312) 853-7000
Fax:   (312) 853-7036
emattson@sidley.com

Lisa Tate
Vice President, Litigation & Associate
  General Counsel
American Council of Life Insurers
101 Constitution Avenue, NW
Suite 700
Washington, DC 20001
Tel: (202) 624-2153
Fax: (866) 953-4096
lisatate@acli.com

## CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,014 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 3d Cir. L.A.R. 29.1(b).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared a proportionally spaced typeface using Microsoft Office Word 2007 in 14-point Book Antiqua.

3.  The text of the electronic brief is identical to the text in the paper copies.

4.  A virus detection program (McAfee VirusScan Enterprise + AntiSpyware Enterprise version 8.8.0) has been run on the file containing the electronic brief; no virus was detected.


/s/ Eric S. Mattson

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to 3d Cir. L.A.R. 28.3(d) and 46.1(e), the undersigned counsel

certifies that he is a member of the bar of this Court.


/s/ Eric S. Mattson

**CERTIFICATE OF SERVICE AND ECF COMPLIANCE**

I certify that on March 14, 2014, I caused the foregoing Brief of *Amicus Curiae* American Council of Life Insurers Supporting Affirmance in Favor of Defendants to be electronically filed via the Court's CM/ECF system. I further certify that I caused seven copies of the brief to be mailed to the Clerk of this Court by U.S. Mail, first-class postage prepaid. I certify that I served this brief electronically on the following counsel of record via the ECF system:

> Danielle Disporto
> Email: ddisporto@lpklaw.com
>
> Arnold C. Lakind
> Email: alakind@szaferman.com
>
> Robert L. Lakind
> Email: rlakind@szaferman.com
>
> Robert E. Lytle
> Email: rlytle@szaferman.com
>
> Stephen Skillman
> Email: sskillman@szaferman.com
>
> Robert G. Stevens, Jr.
> Email: rstevens@szaferman.com
>
> Daniel S. Sweetser
> Email: dsweetser@szaferman.com

Daniel P. Condon
Email: dcondon@goodwinprocter.com

Alison V. Douglass
Email: adouglass@goodwinprocter.com

James O. Fleckner
Email: jfleckner@goodwinprocter.com

Jonathon B. Lower
Email: jlower@gibbonslaw.com

Brian J. McMahon
Email: bmcmahon@gibbonslaw.com

Radha Vishnuvajjala
Email: vishnuvajjala.rad@dol.gov


/s/ Eric S. Mattson